MARY CHARLOTTE NELME GRIFFIN, BENNETT M. EDWARDS, AND JAMES A. HARDISON, JR., ADMINISTRATIVE TRUSTEES UNDER ARTICLE XXII OF THE WILL OF GENERAL WILLIAM A. SMITH, AND AMERICAN BANK AND TRUST COMPANY, TRUSTEE UNDER ARTICLE XXII OF THE WILL OF GENERAL WILLIAM A. SMITH v. THE RIGHT REVEREND THOMAS A. FRASER, JOSEPH B. CHESHIRE, JR., A. L. PURRINGTON, AND HENRY D. HAYWOOD, TRUSTEES OF THE EPISCOPAL DIOCESE OF NORTH CAROLINA; AND RUFUS L. EDMISTEN, ATTORNEY GENERAL OF NORTH CAROLINA

No. 7820SC244

(Filed 6 February 1979)

1. **Declaratory Judgment Act § 4.7— interpretation of Internal Revenue Code— application to testamentary trusts—no justiciable controversy**

There was no controversy between the parties justiciable under the Declaratory Judgment Act where plaintiffs, the administrative trustees of a testamentary trust, sought to have provisions of the Internal Revenue Code interpreted by the trial court so as to render the confiscatory tax on accumulations by private foundations applicable to income of a second testamentary trust paid to and held by the Episcopal Diocese of North Carolina, and then sought to use such ruling to create a controversy between the parties as to whether the Diocese should pay such funds to plaintiff administrative trustees to be spent for the benefit of a school set up under the first trust.

2. **Taxation § 28.1— Internal Revenue Code—confiscatory tax on accumulations by private foundations—inapplicability to Episcopal Diocese**

The trial court erred in concluding that income of a testamentary trust paid to the Episcopal Diocese of North Carolina was subject to the confiscatory tax imposed by provisions of the Internal Revenue Code on accumulations by private foundations.

3. **Trusts § 8 — testamentary charitable trusts — pour-over provisions — right to income**

   Cause is remanded for an evidentiary hearing and determination by the trial court as to the effect of pour-over provisions of two testamentary charitable trusts and the rights of beneficiaries of those trusts to the income thereof.

APPEAL by defendant Diocese from *McConnell, Judge*. Judgment entered 8 November 1977 in Superior Court, ANSON County. Heard in the Court of Appeals 10 January 1979.

*H. P. Taylor, Jr., for the plaintiffs.*

*Craighill, Rendleman, Clarkson, Ingle & Blythe, by J. B. Craighill and William B. Webb, Jr., for the defendant Diocese.*

*Attorney General Edmisten, by Associate Attorney Marilyn R. Rich, for the State.*

MARTIN (Robert M.), Judge.

General William A. Smith died testate 18 April 1934, providing in his holographic will (under Items XXI and XXII of that instrument) for the creation of several trust funds, three of which were to accumulate for 99 years before disbursement of any of the corpus or increment thereon. Items XXI and XXII are set out below:

> *ITEM XXI.* It is my desire to aid the church and education with a part of the worldly goods God has graciously permitted me to accumulate. To this end I direct my executor to place in the Bank of Wadesboro for the Protestant Episcopal Church of the Diocese of North Carolina — should this Diocese be divided, then the fund created by this item is to go to that Diocese which includes the village of Ansonville — the sum of twenty-five thousand dollars value in stocks of Domestic Corporations — The Bank of Wadesboro will treat this as a special trust. The said Bank is empowered to change these stocks in its discretion, to invest the increment of this fund in good, safe, dividend paying stocks, bonds, choses in action or realty bearing in mind the importance of safe-guarding this fund, while increasing it for the following purpose. This fund is committed to said Bank of Wadesboro and its successors for the period of ninety-nine years, it and its accumulations

to be paid to the Diocese of North Carolina at the expiration of said 99 years. My purpose is to give said Bank the same power in the administration of this fund as I now possess. The Bank of Wadesboro shall receive five per cent of the increment till the fund amounts to Fifty Thousand dollars, four per cent of the increment till it increases to Seventy-five Thousand dollars, three and half per cent to One Hundred Thousand dollars. Afterwards three per cent of the increment as compensation for wisely, discreetly and honestly investing and reinvesting this fund. No compensation shall the Bank of Wadesboro or its successors receive for handing over the amount of this fund to the Diocese of North Carolina.

Should said Bank decline this trust, then it is to be offered to the First National Bank of Wadesboro. Then to the American Trust Company, then to Wachovia Bank of Winston-Salem. I further instruct my executor to place a like sum in stocks to the value of Twenty-five Thousand dollars approximately and approximately the amount placed in the Bank of Wadesboro into the American Trust Company of Charlotte, N.C. for a like period of 99 years to be held by them in trust with like power of investment and reinvestment, etc., and compensation as give above to the Bank of Wadesboro. The Bank of Wadesboro and American Trust Company each for itself are instructed and directed to make annual report to the Diocese at its Annual Conventions the amount of the principal and increment of this fund. Every three years said reports shall be certified to by an accredited auditor, when desired by the Diocese Convention of N.C.

I also direct my executor to place in the Bank of Anson, Ansonville, N.C. Five Thousand dollars in good stocks or cash in said Bank of Anson with the same and like powers changing said stock in its discretion, in investing and reinvesting, compensation and reports to the Annual Convention of the Diocese of North Carolina — and at the close of 99 year period to pay the total amount of this fund to said Diocese. Should either Bank decline this trust and trusteeship, then I direct my Executor to offer it to the Bank of Wachovia, in Winston-Salem. This fund when paid to the Diocese of North Carolina is to be used and administered by said Diocese as directed in item XXII of this my will.

*ITEM XXII.* I give to the Diocese of North Carolina as named in item XXI of this will, the remainder of my estate both real and personal, to be used primarily for the benefit of my race—for purposes as set down below.

I request and direct the Convention of North Carolina at its first session after I fall on sleep to select and appoint for a term of three years, three honorable, capable and discreet members of the Protestant Episcopal Church, residing in Anson County to administer this fund: Erecting buildings on land in or near the village of Ansonville to an amount not exceeding in cost Fifty Thousand dollars and setting apart the balance or remainder of the fund given by this item as a permanent fund using only the increment. These three trustees and their successors to be appointed tri-annually and they and their successors are instructed to use the fund created by this item and by item XXI in schools for both sexes of the white race—Educational and Industrial schools, Hospitals, gymnasiums and other purposes in their discretion—mainly and principally I have in mind training youth trades and domestic arts by which they may be enabled to earn their own living and become efficient members of our County and Commonwealth.

This fund and that created by item XXI when it comes into possession of the Diocese shall be known as the "Gen. W. A. Smith Trust" or other designation the Convention may elect to name it, shall be administered by the three trustees and their successors according to their judgment and discretion, limited only to Ansonville and its near vicinity. They shall submit an annual report to the Convention of the Diocese of North Carolina, setting forth in full, the amount received and disbursed, the purpose of disbursement, their acts during each year and reasons for said acts, accompanied by an authorized auditor's report.

Plaintiffs, administrative trustees of the fund created in Item XXII of General Smith's will, brought this civil action to compel the ultimate payment to them as trustees of certain funds now being held and accumulated by the Episcopal Diocese of North Carolina. The administrative trustees, or their predecessors in of-

fice, have earlier attempted to modify the trusts to allow the immediate payout of the trust earnings for the benefit of the school in Ansonville created under Item XXII, citing present need and contending that the ninety-nine year accumulations were against public policy. These contentions were rejected by our Supreme Court in *Penick v. Bank*, 218 N.C. 686, 12 S.E. 2d 253 (1940), and the funds continued to accumulate until another action was brought in Wake County in 1971 to allow the trusts so accumulating income to disburse their incomes annually or more frequently so as to avoid being subject to certain confiscatory taxes imposed on private foundations by the Tax Reform Act of 1969. By consent judgment entered 3 October 1972, Judge Canaday allowed the amendment of the trust instruments so that the trusts could comply with the changed provision of the federal tax laws, and it was ordered that the increment from the three funds set up by Item XXI be paid to the Episcopal Diocese of North Carolina. The Diocese has since held and accumulated these funds. (The Diocese resigned from trusteeship of all of the various trusts in 1942, feeling that their administration would be better left to persons or organizations who made such activity their profession.) Plaintiffs in this action sought to have the Internal Revenue Code interpreted by the trial court so as to render the confiscatory tax on accumulations by private foundations applicable to the funds paid to and held by the Diocese, and therefore necessitating that the Diocese pay over these funds so that they could be spent by the administrative trustees for the benefit of the school set up under Item XXII of General Smith's will. The Diocese answered, denying the allegations of the administrative trustees and praying for construction of Items XXI and XXII of the will. The Attorney General, party to the action under G.S. 36-23.2 which makes him legal representative of the public interest, answered perfunctorily, admitting conflicting and contradictory allegations. The trial judge awarded plaintiffs the relief sought, basing his ruling upon the interpretation of the pertinent Internal Revenue Code sections urged by plaintiffs. From this order, the defendant Diocese appeals. We reverse and remand with instructions.

[1] This action was brought by plaintiffs under the Declaratory Judgment Act (N.C. G.S. 1-253 *et seq.*) seeking interpretations of §§ 170, 509, 4942 and 4947 of the Internal Revenue Code (1954, as amended). Plaintiffs contended, and the trial judge ruled, that the

income paid out of the three trusts of Item XXI to the Diocese pursuant to Judge Canaday's order of 1971 amending the trust instrument was still subject to the confiscatory tax imposed by § 4942 on accumulations by private foundations, and that the exemption of churches from private foundation status (under § 509 (a)(1) and § 170(b)(1)(a)) was not applicable to the instant situation. Plaintiffs have brought forward no authority in support of their contentions, and the trial judge did not cite any in his order so ruling. We have been unable to locate any such authority either, and are of the opinion that the complaint should have been dismissed for lack of a justiciable controversy between the parties. The Internal Revenue Service had issued an advisory letter to the corporate fiduciaries of the trust funds indicating that their annual disbursements of trust income to the Diocese was a qualified distribution that relieved the trusts from the § 4942 tax on private foundations' accumulations. No challenges heretofore have been made to the propriety of the Diocese's holding and accumulating the funds.

It has long been settled that there must exist some justiciable controversy between parties in a declaratory judgment action for the court to entertain jurisdiction of it under G.S. 1-253. "Jurisdiction under the Declaratory Judgment Act, G.S. 1-253 *et seq.*, may be invoked 'only in a case in which there is an actual or real existing controversy between adverse interests in the matter in dispute.' *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 [(1949)], and cases cited." *Greensboro v. Wall*, 247 N.C. 516, 519, 101 S.E. 2d 413, 416 (1957). There must appear that "a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities under . . . a statute . . . exists between or among the parties," *Light Co. v. Iseley*, 203 N.C. 811, 167 S.E. 56 (1932). It is a "jurisdictional necessity" that a genuine controversy between parties having conflicting interests exist. *Tryon v. Power Co.*, 222 N.C. 200, 22 S.E. 2d 450 (1942).

What plaintiffs apparently sought by their complaint was a ruling creating a new interpretation of the Internal Revenue Code sections cited above, and then to use such ruling as creating a controversy between the parties to this action justifying the granting of relief. We are of the opinion that "bootstrapping" of this type will not suffice for the jurisdictional prerequisites of a declaratory judgment action. Although G.S. 1-254 gives the court

jurisdiction to construe a statute, the request for construction must come from parties whose rights, status or other legal relations are affected by that statute. Plaintiffs have not pled or shown how *their* rights, etc., are affected by the Internal Revenue Code provisions for which they sought construction. Nor have the plaintiff administrative trustees under Item XXII of the will pled their relations with the trusts under Item XXI of the will so as to confer jurisdiction under G.S. 1-255.

What plaintiffs should have done, and what defendant did do, was to pray for construction of Items XXI and XXII so as to determine the rights of the various parties as beneficiaries under the trusts. The trial court did not consider questions of construction, as they were not apparently argued below. Since a prayer for construction was made, and since construction of the two items of General Smith's will is necessary to a proper determination of the parties' rights, we remand with instructions to the trial judge to hear evidence and arguments and make findings of fact and conclusions of law pertinent to the construction of Items XXI and XXII.

[2] Initially, we would note the inappropriateness of the State's trial courts as a forum for construction of federal taxation statutes. Although exclusive jurisdiction of federal tax matters is not vested in the federal courts, leaving the several state courts with concurrent jurisdiction over such questions, federal courts and the Internal Revenue Service have consistently ignored state court rulings on federal tax questions where the state rulings threatened to impair the uniformity of the national tax scheme. (We also note that the United States was not joined as a party to the action for construction of the *Code* sections, creating another defect in the declaratory judgment status of the proceeding under G.S. 1-260.) Questions of federal taxation are generally matters of substantial complexity, and the federal courts and the Internal Revenue Service have well established procedures for determining tax controversies and construing the meaning of federal tax statutes. In the present case, as the trial court's jurisdiction over the action was defective, and as all necessary parties were not joined, the ruling as to the taxable status of certain funds in the hands of the Diocese would be a nullity; however, the interpretation of the several Internal Revenue Code provisions listed *supra*

made by the trial court which purports to render the Diocese into a private foundation is clearly erroneous and is reversed.

[3]   It is not necessary to consider the questions of tax law raised by plaintiffs to settle the dispute between them and the Diocese. The Tax Reform Act of 1969 manifestly sought to prevent private charitable foundations from accumulating their incomes for no better reason than the whim of the foundations' trustors, and placed certain confiscatory taxes upon non-qualifying accumulations in an effort to stimulate the flow of income out of the foundations and into the economy via the religious, charitable, or educational purposes for which the foundations were created to ultimately benefit. The consent judgment of 3 October 1972 sought to, was intended to, and did bring the three trusts of Item XXI into compliance with the changes in the tax law. It did not, however, determine the question of who should receive what portions of the income to be paid out and, indeed, it could not have, as the administrative trustees of the trust created by Item XXII (plaintiffs to this action and potential beneficiaries of some or all of the Item XXI trusts) were not parties to that judgment. To comply with the current federal tax law, the income from the Item XXI trusts must pass to the hands of the ultimate beneficiaries free of trust and capable of being immediately spent for the purposes for which the trusts were created.

There are certain ambiguities in the will requiring construction. Defendants, in their answer, prayed for a construction of the two items (Items XXI and XXII) of the will in question. Although the trial court's order implicitly construed these items, the record is devoid of evidence, findings of fact or conclusions of law dealing with construction or interpretation of the two contested items. Item XXI announces the testator's intention to aid the church and education. Three trust funds are then set up; two of which arguably would ultimately be paid to the Episcopal Diocese of North Carolina and a third which is explicitly created for the benefit of the school and trust created under Item XXII. Whether the pour-over into Item XXII provided for in paragraph (3) of Item XXI is limited in effect only to that same paragraph or applies to the entire item, and whether the reference in Item XXII to "that [fund] created in Item XXI" includes only paragraph (3) or all of the paragraphs of Item XXI, and a determination of the testator's ultimate intent are all questions of which resolution

must be had before any determination of the rights and interests of the various parties may be made.

The State contends in its brief that the issue of construction (with reference to the pour-over provisions of Items XXI and XXII) was squarely before the trial court and was properly resolved in plaintiffs' favor. While we express no opinion as to the ultimate construction of these two items, we are of the opinion that the trial judge's findings of fact from the evidence and his conclusions of law were insufficient to support his order, necessitating that we remand for further hearing and findings.

In summary, the portions of this declaratory judgment action seeking construction of Internal Revenue Code §§ 170, 509, 4942, and 4947 are remanded to the trial court for entry of dismissal. The trial judge's order construing the above-cited code provisions imposing taxable private foundation status upon the Diocese, and thereby requiring payment of the accumulated income from the Diocese to the administrative trustees for immediate use is vacated. The action is remanded to determine the issues of construction raised by the Diocese in its answer and discussed above, so that the trial court may make findings of fact and conclusions of law with reference to the testator's (General William A. Smith's) intent and construing his will, such findings to be consonant with whatever competent and relevant evidence may be adduced in support or derogation of the several parties' contentions. Upon these findings and conclusions the trial judge may enter orders directing the disposition of the funds held by the Diocese derived from the income of the trusts created under Item XXI of General Smith's will and grant other relief as necessary, not inconsistent with this opinion.

Reversed and remanded.

Judges MITCHELL and ERWIN concur.