KINESIS ADVERTISING, INC., PLAINTIFF, v. LARRY HILL, DAN ROBINETTE, AND ALTYRIS INCORPORATED, DEFENDANTS v. ROBERT K. ADKINS, NANCY J. ADKINS, AND ADKINS & ASSOCIATES, LTD. AND STEVE REAVIS,[1] ADDITIONAL COUNTERCLAIM DEFENDANTS

No. COA06-1224

(Filed 6 November 2007)

**1. Appeal and Error— appealability—partial summary judgment—Rule 54(b) certification—substantial right**

The trial court did not err by granting Rule 54(b) certification of both plaintiff's and defendants' appeals of the granting of partial summary judgment in the 16 May 2006 order, because, given the prolonged procedural history of the case, the number of claims and counterclaims, and the same set of operative facts underlying the entire case, the trial court properly determined that the claims that have been dismissed and those that remain are factually and legally intertwined such that proceeding to trial could result in verdicts inconsistent with the earlier dismissals. Additionally, the Court of Appeals determined the 30 June 2004 order dismissing several of defendants' claims likewise affect a substantial right and should be addressed on the merits.

**2. Appeal and Error— appealability—denial of summary judgment—failure to show substantial right**

The Court of Appeals dismissed those portions of defendants' appeals that concern the trial court's denial of their motion

1. Steve Reavis was not a named additional counterclaim defendant in the 16 May 2006 order but was listed as such in the 30 June 2004 order.

for summary judgment on the plaintiff's claims for trade secret violations, breach of contract on employee solicitation if based in tort, conversion, tortious interference with contract, constructive trust/unjust enrichment, unfair and deceptive trade practices, and an accounting, because defendants failed to argue any substantial right would be affected by allowing those claims to proceed to trial with the remaining counterclaims.

**3. Employer and Employee— covenant not to compete—confidentiality agreement—nonsolicitation agreement—consideration—uncertified shares—summary judgment**

The trial court erred by granting summary judgment to defendants as to plaintiff corporation's claims for breach of the covenant not to compete, confidentiality agreement, and nonsolicitation agreement, because although as a matter of law uncertified shares may constitute valuable consideration for purposes of making a contract valid and enforceable, a genuine issue of material fact remained as to whether plaintiff corporation actually issued and delivered the shares to the individual defendants such that they constituted valuable consideration to make the covenant not to compete, confidentiality agreement, and nonsolicitation agreement valid and enforceable.

**4. Employer and Employee— covenant not to compete—reasonableness of restrictions**

The trial court erred by concluding that defendants were entitled to summary judgment on the basis that the restrictions on the pertinent covenant not to compete were unreasonable as a matter of law, and the case is remanded for these claims to be heard by a jury with the others that are pending, because: (1) the language in the covenant not to compete signed by defendants would not bar them from any type of employment or activities with any company, but instead restricted them only from dealing with, soliciting the business of, or otherwise conducting business of the type similar to that of plaintiff employer for two years in two counties; (2) the restrictions imposed by plaintiff are no wider in scope than is necessary to protect the business of the employer; (3) whether the activities engaged in by defendants were similar to those of plaintiff is a question of fact for a jury to decide; and (4) the issues of actual damages suffered by plaintiff and whether defendants did in fact breach the covenant not to compete and confidentiality and nonsolicitation agreement are also questions of fact for the jury.

**5. Employer and Employee— fiduciary duty**

The trial court erred by granting summary judgment to defendants on plaintiff corporation's claim for breach of fiduciary duty by defendant Hill because: (1) although none of plaintiff's corporate records indicated that Hill was the president of plaintiff, there was deposition evidence that Hill was promoted to that position in January 2000 after he signed the pertinent agreements, and Hill's own business cards named him as president of plaintiff; and (2) whether Hill's level of control and authority rose to the level of a de facto officer, regardless of the official position of another as president, is a question of fact for the jury to decide.

**6. Employer and Employee; Telecommunications— interception of wire communication—accessing voicemail and email accounts—business-related correspondence**

The trial court did not err by granting summary judgment to plaintiff employer on defendants' counterclaim for interception of wire communication even though defendants contend plaintiff accessed their voicemail and email accounts after they had left the company, because: (1) even if such allegations are taken in the light most favorable to defendants, they would not constitute a violation of 18 U.S.C. § 2511(1)(a) or N.C.G.S. § 15A-287(a)(1) when plaintiff was the provider of both the voicemail and email accounts and had the right to access them to retrieve business-related correspondence to protect its rights and property; and (2) plaintiff accessed the messages after they had been received and stored in its system, and thus the messages were not intercepted within the meaning of the Electronic Communications Privacy Act.

**7. Libel and Slander— affirmative defense of qualified privilege—failure to rebut good faith presumption**

The trial court did not err by granting summary judgment to plaintiff corporation on defendants' counterclaim for defamation based on a shareholder's statement to a corporate employee that defendants had stolen millions of dollars from the corporation, because: (1) assuming arguendo that the statement was slanderous, the communication was privileged since the employee was tasked with conducting an inventory of plaintiff's assets to determine what property, if any, was taken by defendants; (2) the shareholder had an interest in the statement, and she made a statement limited in scope and publication which

was proper to the occasion of informing the employee as to the nature of his investigatory duties; (3) defendants failed to rebut the presumption that the shareholder was acting in good faith when she made the statement; and (4) plaintiff has successfully shown that defendants cannot overcome the affirmative defense of qualified privilege.

**8. Jurisdiction— subject matter—fraudulent filing of tax information returns—concurrent jurisdiction**

Although the trial court did not err by dismissing defendants' claim for fraudulent filing of tax information returns on the basis of lack of subject matter jurisdiction, the Court of Appeals disagreed with the grounds specified by the trial court, because: (1) even though the federal and state courts had concurrent jurisdiction over defendants' counterclaim, such matters are better left to the consideration of the federal courts; and (2) nothing required the trial court to exercise concurrent subject matter jurisdiction, and there was uncertainty in federal law as to whether the Schedule K-1s complained of by defendants are payee statements or information returns within the meaning of 26 U.S.C. § 7434.

**9. Appeal and Error— appealability—mootness—reversal of summary judgment**

The trial court erred by dismissing defendants' counterclaims for rescission, a declaratory judgment, and civil conspiracy on the grounds of mootness, because: (1) the trial court's decision was based on its grant of summary judgment as to plaintiff's claims for breach of the covenant not to compete and the solicitation and confidentiality agreements; and (2) the Court of Appeals reversed that grant of summary judgment making the counterclaims no longer moot.

**10. Unfair Trade Practices— employer/employee relationship—covenant not to compete**

The trial court did not err by dismissing defendants' counterclaim for unfair and deceptive trade practices based on an alleged failure to state a claim for which relief may be granted, because: (1) the Court of Appeals has consistently held that the employer/employee relationship does not fall within the intended scope and purpose of the Unfair and Deceptive Trade Practices Act (UDTP); and (2) the Court of Appeals has held that a violation of a covenant not to compete, essentially a breach of contract

within the employer/employee relationship, lies outside the scope of the UDTP.

Appeal by defendants from order entered 30 June 2004 by Judge Catherine C. Eagles and appeal by plaintiff and additional counterclaim defendants and cross-appeal by defendants from order entered 16 May 2006 by Judge John O. Craig, III in Superior Court, Guilford County. Heard in the Court of Appeals 8 May 2007.

> *Wishart, Norris, Henninger & Pittman, P.A., by Pamela S. Duffy and Molly A. Orndorff, for plaintiff-appellant/cross-appellee and additional counterclaim defendants-appellants/ cross-appellees.*

> *Saintsing, PLLC, by James R. Saintsing, for defendants-appellees/cross-appellants Larry Hill and Dan Robinette.*

> *J. Michael Thomas, for defendant-appellee/cross-appellant Altyris, Inc.*

WYNN, Judge.

This case stems from a business dispute between Plaintiff Kinesis Advertising, Inc., and Defendants Larry Hill and Dan Robinette, who worked at Kinesis before leaving and founding their own advertising agency, Defendant Altyris Incorporated. Among other issues, a covenant-not-to-compete, non-solicitation agreement, confidentiality agreement, and shareholders' agreement involving Mr. Hill and Mr. Robinette and Kinesis lie at the heart of this case. After a careful review of the trial courts' orders dismissing certain counterclaims and granting summary judgment as to other claims and counterclaims, we dismiss in part, reverse in part, and affirm in part.

On 8 January 2004, Kinesis filed a complaint against its two former employees, Mr. Hill and Mr. Robinette, and their new company, Altyris Incorporated (collectively, "Defendants"). The complaint alleged that Mr. Hill and Mr. Robinette had breached a covenant-not-to-compete by leaving Kinesis and starting Altyris, their own advertising agency. Additionally, Kinesis asserted in its complaint claims of breach of confidentiality, trade secrets violation, breach of employee solicitation, breach of fiduciary duty, conversion, tortious interference with contract, constructive trust or unjust enrichment, and unfair and deceptive trade practices. Kinesis sought an accounting from Defendants for their advertising services rendered before and

after leaving Kinesis. Kinesis also filed motions for a temporary restraining order and preliminary injunction, which were denied by the trial court.

On 25 February 2004, Kinesis was granted leave to amend its complaint to include information concerning property and confidential information that was allegedly missing after Mr. Hill and Mr. Robinette left Kinesis, as well as contentions that Mr. Hill and Mr. Robinette had engaged in specific acts intended to deplete the company's cash reserves.

According to the allegations of the complaint, Kinesis issued 3,500 shares of stock to Mr. Hill and five hundred shares to Mr. Robinette in January 2000, as consideration for signing a confidentiality, non-competition, and non-solicitation agreement and a shareholders' agreement with Kinesis. In September 2003, Mr. Hill and Mr. Robinette resigned from Kinesis and started their own company, Altyris, also engaged in advertising, with offices a block away from those of Kinesis.

Kinesis contends that, before leaving Kinesis and starting Altyris, Mr. Hill and Mr. Robinette engaged in negotiations with other shareholders of Kinesis, namely, Robert and Nancy Adkins, to buy their stock. However, Kinesis alleges that Mr. Hill and Mr. Robinette did not engage in these negotiations in good faith, but rather with the intention of establishing a competing business. Additionally, after Mr. Hill and Mr. Robinette left Kinesis and started Altyris, six of Kinesis's seven employees left Kinesis within a week and took positions at Altyris; Kinesis asserts that Mr. Hill and Mr. Robinette solicited these employees in violation of the agreements they signed with Kinesis.

On 13 April 2004, Altyris filed an answer to the Kinesis complaint, and set forth the defenses of failure to state a claim, breach of contract, and illegal restraint on trade. On 14 April 2004, Mr. Hill and Mr. Robinette also filed an answer and further asserted counterclaims against Kinesis and additional defendants Robert and Nancy Adkins, Adkins & Associates, and Steve Reavis. Mr. Hill and Mr. Robinette asserted defenses including failure of consideration of the alleged agreements, equitable estoppel, fraud, laches, waiver, and nebulosity with respect to the claim for trade secrets violation.

The counterclaims alleged by Mr. Hill and Mr. Robinette included: common law fraud, rescission of the agreements, piercing the corporate veil, unfair or deceptive trade practices, securities fraud under

KINESIS ADVER., INC. v. HILL

[187 N.C. App. 1 (2007)]

North Carolina law, fraudulent filing of tax information returns, RICO violations by mailing fraudulent tax returns, interception of wire communications, defamation, violations of the Employee Retirement Income Security Act (ERISA), conversion, violations of the North Carolina Wage and Hour Act, and aiding and abetting fraudulent accounting practices. Mr. Hill and Mr. Robinette then amended their counterclaims to include a claim for civil conspiracy and to seek a declaratory judgment as to the question of the enforceability of the shareholders' and confidentiality, non-competition, and non-solicitation agreements and their liability for allegedly fraudulent tax returns filed by Kinesis and the Adkinses. Finally, Mr. Hill and Mr. Robinette later added a claim for declaratory judgment as to liability for credit card purchases on a Kinesis Visa card made prior to their departure from the company.

Kinesis moved to dismiss several of Defendants' counterclaims on 18 May 2004, asserting that they had failed to state a claim for which relief can be granted in their allegations of unfair and deceptive trade practices, RICO violations, ERISA violations, and North Carolina Wage and Hour Act violations. The trial court granted the Kinesis motion on 30 June 2004, dismissing those four counterclaims.

Following extensive discovery by all parties, including depositions, production of documents, and affidavits, as well as numerous other filings by the parties, Defendants moved for summary judgment on 20 January 2006 as to all of the claims asserted by Kinesis. On 30 January 2006, Kinesis likewise moved for partial summary judgment as to the counterclaims for fraud, rescission, piercing the corporate veil, securities fraud, fraudulent filing of tax information returns, interception of wire communications, and defamation. A hearing was held before the trial court on 6 February 2006, and all parties submitted extensive exhibits and other documents for the trial court's review.

On 16 May 2006, the trial court granted partial summary judgment to both sides of the dispute. Specifically, the trial court granted summary judgment to Defendants on the Kinesis claims for breach of the covenant-not-to-compete, breach of contract on confidential information, and breach of fiduciary duty, as well as for breach of contract on employee solicitation to the extent the claim was based on breach of the non-solicitation agreement and not in tort. Likewise, the trial court granted summary judgment to Kinesis on Defendants' counterclaims for interception of wire communications, defamation, fraudulent filing of tax returns, securities fraud, rescission, civil con-

spiracy, and declaratory judgment as to the shareholders' agreement and tax penalties.

Thus, following the trial court's 16 May 2006 order, the only claims remaining for Kinesis were for trade secrets violations, breach of contract on employee solicitation if based in tort, conversion, tortious interference with contract, constructive trust/unjust enrichment, unfair and deceptive trade practices, and an accounting. Defendants' only remaining counterclaims at that point were for common law fraud, piercing the corporate veil, and a declaratory judgment as to the credit card debt. The trial court certified its order as a final judgment under North Carolina Rule of Civil Procedure 54(b), finding that the claims that were dismissed and those that remain are "factually and legally intertwined and pertain to essentially the same conduct" such that proceeding to trial "could produce verdicts inconsistent with verdicts which may later result from trial of one or more of the [claims] which were dismissed."

Both parties now appeal from the trial court's 16 May 2006 summary judgment order, and Mr. Hill and Mr. Robinette also appeal from the 30 June 2004 order dismissing four of their claims.

In its appeal, Kinesis argues that the trial court erred by granting summary judgment to Defendants as to its claims for (I) breach of the covenant-not-to-compete, confidentiality agreement, and non-solicitation agreement; and (II) breach of fiduciary duty.

In their appeal, Mr. Hill and Mr. Robinette argue that the trial court erred by (I) granting summary judgment to Kinesis on the claim for interception of wire communications; (II) granting summary judgment on the claim for defamation; (III) dismissing the claim for fraudulent filing of tax information returns for lack of subject matter jurisdiction; (IV) dismissing as moot the claims for rescission, declaratory judgment, and civil conspiracy; and (V) dismissing their claim for unfair and deceptive trade practices. All Defendants further contend that the trial court erred by denying their motion for summary judgment as to each of the Kinesis claims remaining after the 16 May 2006 order.

[1] We note at the outset that the parties are appealing interlocutory orders that do not dispose of the entire case in controversy. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire contro-

versy."), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Although such orders are not usually immediately appealable, *see id.*, our Rules of Civil Procedure allow a trial court to certify that his order is a "final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay" for an appeal. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2005). Additionally, we allow interlocutory appeals from orders affecting a "substantial right," that is, "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved by law: a material right." *Ostreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976).

Although not binding on this Court, we afford a trial court's Rule 54(b) certification great deference on appeal. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998). Here, given the prolonged procedural history of the case, the number of claims and counterclaims, and the same set of operative facts underlying the entire case, we agree with the trial court's determination that the claims that have been dismissed and those that remain are "factually and legally intertwined" such that proceeding to trial could result in verdicts inconsistent with the earlier dismissals. We therefore affirm the trial court's Rule 54(b) certification and address the merits of both Kinesis's and Defendants' appeals of the granting of summary judgment in the 16 May 2006 order. Additionally, because we find that the 30 June 2004 order dismissing several of Defendants' claims likewise affects a substantial right, we address the merits of those arguments.

[2] However, Defendants also appeal the denial of summary judgment in their favor as to the remaining Kinesis claims. Because Defendants have failed to argue, and we do not find, that any substantial right will be affected by allowing those claims to proceed to trial with the other, remaining counterclaims, we decline to consider the merits of those contentions. Accordingly, we dismiss those portions of Defendants' appeals that concern the trial court's denial of their motion for summary judgment on the Kinesis claims for trade secrets violations, breach of contract on employee solicitation if based in tort, conversion, tortious interference with contract, constructive trust/unjust enrichment, unfair and deceptive trade practices, and an accounting.[2]

---

2. We note that those were the only arguments put forth by Defendant Altyris on appeal; therefore, Altyris's entire appeal is dismissed as interlocutory.

We review an appeal from summary judgment for whether the evidence, viewed in the light most favorable to the non-moving party, shows there is any genuine issue of material fact between the parties, or whether the moving party is entitled to a judgment as a matter of law. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). Additionally, a defendant may show he is entitled to summary judgment by: "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense." *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003) (internal quotation and citation omitted), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520, *reh'g denied*, 358 N.C. 381, 597 S.E.2d 129 (2004).

## Kinesis Appeal

Kinesis argues that the trial court erred by granting summary judgment to Defendants as to its claims for (I) breach of the covenant-not-to-compete, confidentiality agreement, and non-solicitation agreement; and (II) breach of fiduciary duty.

### I.

**[3]** First, Kinesis asserts that a genuine issue of material fact remains as to the value of the consideration offered to Mr. Hill and Mr. Robinette in exchange for signing the covenant-not-to-compete, confidentiality and non-solicitation agreement, and shareholders' agreement. Moreover, Kinesis contends that the restrictions imposed by the covenant-not-to-compete are not unreasonable as a matter of law, and that there is a genuine issue of material fact as to damages to Kinesis and whether Mr. Hill and Mr. Robinette breached the agreements.

In January 2000, while working for Kinesis, Mr. Hill and Mr. Robinette signed a shareholders' agreement, a covenant-not-to-compete, and confidentiality and non-solicitation agreement, all combined into one contract, for which Kinesis pledged to issue them shares of stock in Kinesis. By signing the agreements, Mr. Hill and Mr. Robinette agreed to hold confidential all "trade secrets" of Kinesis,

defined as financial, marketing, personal, client, and computer hardware, software, and programs information, and not "discuss, communicate or transmit to others, or make any unauthorized copy of or use the Trade Secrets in any capacity, position or business unrelated to [Kinesis]."

Moreover, Mr. Hill and Mr. Robinette agreed that, during their employment with Kinesis, and for a period of two years following the termination of that employment, they would:

> refrain from dealing with, soliciting the business of, or otherwise conducting business [whether on behalf of Employee or of any other person or entity for whom Employee is performing services or in which Employee has a financial interest after termination of Employee's employment] of the type similar to that of Employer (1) with any client of Employer at the time of such termination, or (2) within any county in North Carolina wherein the Employer had a client at the time of such termination of the Employee's employment.

During that same period, the non-solicitation portion of the agreement dictated that Mr. Hill and Mr. Robinette would "not solicit, induce, aid or suggest to any of the employees of, consultants to, or other persons having a substantial contractual relationship with [Kinesis] to leave such employment, cease such consulting or terminate such contractual relationship with [Kinesis]."

### Consideration

Formation of a valid contract "requires an offer, acceptance and consideration." *Cap Care Group, Inc. v. McDonald,* 149 N.C. App. 817, 822, 561 S.E.2d 578, 582, *disc. review denied,* 356 N.C. 611, 574 S.E.2d 676 (2002). A covenant-not-to-compete further requires five conditions to be valid and enforceable: (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and (5) designed to protect a legitimate business interest of the employer. *Farr Assocs., Inc. v. Baskin,* 138 N.C. App. 276, 279, 530 S.E.2d 878, 881 (2000) (citation omitted); *see also A.E.P. Indus. v. McClure,* 308 N.C. 393, 402-03, 302 S.E.2d 754, 760 (1983). If the covenant-not-to-compete is entered after the start of employment, separate consideration must be issued in order for the covenant-not-to-compete to be enforceable. *Stevenson v. Parsons,* 96 N.C. App. 93, 97, 384 S.E.2d 291, 292-93 (1989), *disc. review denied,* 326 N.C. 366, 389 S.E.2d 819 (1990).

In consideration for Mr. Hill and Mr. Robinette being bound by all the terms of the contract, Kinesis pledged to issue 3,500 shares of stock to Mr. Hill and five hundred shares of stock to Mr. Robinette. However, the parties now disagree as to whether the shares were ever actually issued to Mr. Hill and Mr. Robinette, or if the contract was made void and Mr. Hill and Mr. Robinette were released from its terms by the failure of the consideration offered by Kinesis. Nevertheless, the parties do agree that Mr. Hill and Mr. Robinette never received stock certificates representing their shares. Thus, the question before us is whether, as a matter of law, uncertificated shares may constitute valuable consideration for purposes of making a contract valid and enforceable. We conclude that they do, but that a genuine issue of material fact remains as to whether Kinesis actually issued and delivered the shares to Mr. Hill and Mr. Robinette.

Under the North Carolina Business Corporation Act, a corporation, through its board of directors, may issue shares without a certificate unless its articles of incorporation or bylaws provide otherwise, with such shares being as valid and valuable as those with certificates. *See* N.C. Gen. Stat. §§ 55-6-25(a), 55-6-26(a) (2005). If a corporation decides to issue uncertificated shares, it must send the shareholder, within a reasonable time, a written statement to include: "(1) the name of the issuing corporation and that it is organized under the law of North Carolina; (2) the name of the person to whom issued; and (3) the number and class of shares and the designation of the shares, if any, the certificate represents." *Id.* §§ 55-6-25(b)(1)-(3), 55-6-26(b).

Both sides to the dispute assert facts that would support or contradict the contention that the uncertificated shares were actually issued. For example, Kinesis maintains that the shareholders' agreement signed by Mr. Hill and Mr. Robinette contained all of the information required by Section 55-6-25(b)(1), while Mr. Hill and Mr. Robinette assert that the agreement only states that Kinesis is "willing to give and grant" the shares in question and is not proof that Kinesis actually followed through on that promise.

Additionally, Mr. Hill and Mr. Robinette point to the absence of their names listed as shareholders in the Kinesis corporate books, as required by Section 55-16-01(c), which provides that corporations must "maintain a record of [their] shareholders, in a form that permits preparation of a list of the names and addresses of all shareholders, in alphabetical order by class of shares showing the number and class of shares held by each." *Id.* § 55-16-01(c). Kinesis responds that the

company amended its Schedule K-1s, a document required by the Internal Revenue Service to show the shareholders of an S corporation, to name Mr. Hill and Mr. Robinette as shareholders.

Mr. Hill and Mr. Robinette further note that Kinesis's Articles of Incorporation provide that "[t]ransfers of shares of the corporation shall be made only on the stock transfer books of the corporation by the holder of record," and Kinesis counters that making the shareholders' agreement a part of the corporate minute books satisfied that requirement.

The existence of these conflicting contentions, based on evidence in the record, reminds us that it is not our task on review of summary judgment to determine which side's evidence is most persuasive or compelling. Rather, we consider only whether a genuine issue of material fact remains or if judgment may be rendered as a matter of law. *Bruce-Terminix Co.*, 130 N.C. App. at 733, 504 S.E.2d at 577. Accordingly, we hold that a genuine issue of material fact remains as to whether the Kinesis shares promised to Mr. Hill and Mr. Robinette were actually issued, such that they constituted valuable consideration to make the covenant-not-to-compete and confidentiality and non-solicitation agreement valid and enforceable.

### Reasonableness of Restrictions

[4] Next, Kinesis contends that the restrictions of the covenant-not-to-compete were not unreasonable as a matter of law, so Mr. Hill and Mr. Robinette were not entitled to summary judgment on that basis. We agree.

When considering the geographic limits outlined in a covenant-not-to-compete, we look to six overlapping factors:

(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 312, 450 S.E.2d 912, 917 (1994), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 251 (1995).

Additionally, the time and geographic limitations of a covenant-not-to-compete must be considered in tandem, such that "[a] longer

period of time is acceptable where the geographic restriction is relatively small, and *vice versa.*" *Baskin*, 138 N.C. App. at 280, 530 S.E.2d at 881 (citing *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 158 S.E.2d 840 (1968)). To show reasonableness of a geographic restriction, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Hartman*, 117 N.C. App. at 312, 450 S.E.2d at 917. Nevertheless, to be valid, the restrictions "must be no wider in scope than is necessary to protect the business of the employer." *Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 521, 257 S.E.2d 109, 114 (1979).

Here, the covenant-not-to-compete signed by Mr. Hill and Mr. Robinette had a two-year time restriction against soliciting or conducting business "of the type similar to that of [Kinesis]" with any Kinesis client or in any North Carolina county in which Kinesis did business at the time they left the company. Mr. Hill and Mr. Robinette do not challenge the reasonableness of the two-year time restriction, nor the geographic restriction that would have barred them from doing business similar to that of Kinesis in Forsyth and Guilford Counties, where Kinesis had clients at the time of their departure from the company. Rather, Mr. Hill and Mr. Robinette contend that the "similar to" language is impermissibly vague because it does not sufficiently describe the activities they would be barred from pursuing. We find this argument to be unpersuasive.

We have previously held that a covenant-not-to-compete is

> overly broad in that, rather than attempting to prevent [the former employee] from competing for [] business, it requires [the former employee] to have no association whatsoever with any business that provides [similar] services. . . . Such a covenant would appear to prevent [the former employee] from working as a custodian for any "entity" which provides [similar] services.

*Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920. The language in the covenant-not-to-compete signed by Mr. Hill and Mr. Robinette would not bar them from any type of employment or activities with any company similar to Kinesis; rather, they are restricted only from "dealing with, soliciting the business of, or otherwise conducting business . . . of the type similar to that of [Kinesis]" for two years in two counties. We have concluded that similar language in other covenants-not-to-compete is not unreasonable as a matter of law. *See Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, ——, 638 S.E.2d 617, 622 (2007)

(finding language that would allow employment with a direct competitor in area that would not compete with business not to be overly broad as a matter of law); *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 638-39, 568 S.E.2d 267, 273 (2002) (holding valid and enforceable a provision barring employment in an identical position with a direct competitor); *but see VisionAIR, Inc. v. James*, 167 N.C. App. 504, 606 S.E.2d 359 (2004) (finding language that would bar any type of employment with a business similar to the company in question to be overly broad).

Accordingly, we likewise hold here that the restrictions imposed by Kinesis in the covenant-not-to-compete are "no wider in scope than is necessary to protect the business of the employer." *Hedgecock*, 42 N.C. App. at 521, 257 S.E.2d at 114. Moreover, we note that whether the activities engaged in by Mr. Hill and Mr. Robinette were indeed "similar to" those of Kinesis is a question of fact for a jury to decide.

The issues of actual damages suffered by Kinesis and whether Mr. Hill and Mr. Robinette did, in fact, breach the covenant-not-to-compete and confidentiality and non-solicitation agreement are likewise questions of fact for a jury to decide. The parties have presented a voluminous number of documents, exhibits, and depositions to this Court in support of their positions; it is clear that there are two, if not several, sides to this story. Given that summary judgment should not have been granted on the basis of failure of consideration or the reasonableness of the restrictions imposed in the covenant-not-to-compete, we reverse the trial court and remand these claims to be heard by a jury with the others that are pending.

II.

[5] Next, Kinesis argues that a genuine issue of material fact remains as to whether Mr. Hill owed a fiduciary duty to Kinesis that he did, in fact, breach. We agree.

An officer of a corporation "with discretionary authority" must discharge his duties in good faith, conform to a reasonable standard of care, and act in a manner he reasonably believes is in the best interests of the corporation. N.C. Gen. Stat. § 55-8-42(a) (2005). Corporate officers are described in the corporation's bylaws or appointed by its board of directors in accordance with those bylaws. *Id.* 55-8-40(a). Additionally, in North Carolina, an individual may owe a fiduciary duty to the corporation if he is considered to be a *de facto* officer or director, with authority for tasks such as signing tax

KINESIS ADVER., INC. v. HILL

[187 N.C. App. 1 (2007)]

returns, offering major input as to the company's formation and operation, or managing the company. *Lowder v. All Star Mills, Inc.*, 75 N.C. App. 233, 241, 330 S.E.2d 649, 654-55, *disc. review denied*, 314 N.C. 541, 335 S.E.2d 19 (1985).

In the instant case, Kinesis's bylaws provide for a President, Secretary, Treasurer, and "such Vice-Presidents, Assistant Secretaries, Assistant Treasurers, and other officers as may from time to time be appointed by or under the authority of the Board of Directors." The bylaws further state that the President "shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation." The President is authorized by the bylaws to sign certain legal instruments binding Kinesis, such as stock certificates, deeds, mortgages, bonds, and contracts.

Although none of Kinesis's corporate records indicate that Mr. Hill was the President of Kinesis, Ms. Adkins stated in her deposition that Mr. Hill was promoted to that position in January 2000, when he signed the covenant-not-to-compete, shareholders' agreement, and confidentiality and non-solicitation agreement. Moreover, Mr. Hill's own business cards named him as President of Kinesis. Although Mr. Adkins is named President in Kinesis's books and records, and Mr. Hill claimed to have no authority to sign legal documents and only limited authority over business decisions, Ms. Adkins explained that Mr. Hill "was not the elected president, but everybody received him as the president publicly. [Mr. Adkins] and I were not known basically to anyone outside of Kinesis."

Whether Mr. Hill's level of control and authority rose to the level of a *de facto* officer, regardless of the official position of Mr. Adkins as President, is a question of fact for the jury to decide. We therefore reverse the trial court's grant of summary judgment on this claim.

In sum, we hold that the trial court erred by granting summary judgment to Defendants on Kinesis's claims for breach of the covenant-not-to-compete and the confidentiality and non-solicitation agreements, and breach of fiduciary duty.

### Hill and Robinette Appeal

In their remaining arguments on appeal, Mr. Hill and Mr. Robinette argue that the trial court erred by (I) granting summary judgment to Kinesis on the claim for interception of wire communi-

cations; (II) granting summary judgment on the claim for defamation; (III) dismissing the claim for fraudulent filing of tax information returns for lack of subject matter jurisdiction; (IV) dismissing as moot the claims for rescission, declaratory judgment, and civil conspiracy; and (V) dismissing their claim for unfair and deceptive trade practices.

I.

[6] First, Mr. Hill and Mr. Robinette argue that the trial court erred by granting summary judgment to Kinesis on their counterclaim for interception of wire communication. We disagree.

The Federal Electronic Communications Privacy Act bars individuals from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a) (2005). North Carolina likewise prohibits such actions. *See* N.C. Gen. Stat. § 15A-287(a)(1) (2005).[3] Nevertheless, both statutes allow for an exception for

> an officer, employee, or agent of a provider of electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of employment while engaged in any activity that is a necessary incident to . . . the protection of the rights or property of the provider of that service.

*Id.* § 15A-287(c). Moreover, the statute applies only to those communications that have been intercepted, not those that have been stored. *See id.* § 15A-286(13) (defining "intercept" as "the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device[,]" and "aural transfer" as "containing the human voice at any point between and including the point of origin and the point of reception.").

Mr. Hill and Mr. Robinette contend that Kinesis accessed their voicemail and e-mail accounts after they had left the company and thereby violated the statutes. However, such allegations, even when

---

3. As previously noted by this Court, the federal and state wiretapping laws are substantially the same. *See State v. Price*, 170 N.C. App. 57, 65, 611 S.E.2d 891, 897 (2005). Accordingly, we will refer to the state law here, even though Defendants have brought their claim under both statutes, as both allow for a private right of action against an individual who violates the terms of the statute.

taken in the light most favorable to Mr. Hill and Mr. Robinette, would not constitute a violation of the Act. Kinesis was the provider of both the voicemail and e-mail accounts and had the right to access them to retrieve business-related correspondence and protect their rights and property. *Id.* § 15A-287(c). Additionally, Kinesis accessed the messages after they had been received and stored in its system; therefore, the messages were not "intercepted" within the meaning of the Act. Accordingly, we affirm the trial court's grant of summary judgment to Kinesis on this counterclaim.

## II.

**[7]** Next, Mr. Hill and Mr. Robinette contend that the trial court erred by granting summary judgment to Kinesis on the counterclaim for defamation. We disagree.

Under North Carolina law, "slander *per se*" is an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has loathsome disease. *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29-30, 568 S.E.2d 893, 898 (2002), *disc. review denied and dismissed*, 357 N.C. 163, 580 S.E.2d 361, *cert. denied*, 540 U.S. 965, 157 L. Ed. 2d 310 (2003). "False words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Id.* at 30, 568 S.E.2d at 898.

Nevertheless, this Court has noted that

[E]ven where a statement is found to be actionable *per se*, the law regards certain communications as privileged. A qualified privilege exists when a communication is made:

(1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest.

The essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a manner and

to the proper parties only. Whether a communication is privileged is a question of law for the court to resolve, unless a dispute concerning the circumstances of the communication exists, in which case it is a mixed question of law and fact. Where the privilege exists, a presumption arises that the communication was made in good faith and without malice. To rebut this presumption, the plaintiff must show actual malice or excessive publication.

*DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 583, 561 S.E.2d 276, 284-85 (2002) (internal citations and quotations omitted), *disc. review denied and dismissed*, 356 N.C. 668, 577 S.E.2d 112 (2003).

Here, Mr. Hill and Mr. Robinette allege that Ms. Adkins made statements to T.R. Johns, a Kinesis employee, that they had stolen millions of dollars from Kinesis. Assuming *arguendo* that this statement is slanderous, we find that the communication was privileged because Mr. Johns was tasked with conducting an inventory of Kinesis assets to determine what Kinesis property, if any, was taken by Mr. Hill and Mr. Robinette. As such, Ms. Adkins had an interest in the statement, and she made a statement limited in scope and publication which was proper to the occasion of informing Mr. Johns as to the nature of his investigatory duties. Mr. Hill and Mr. Robinette have failed to rebut the presumption that Ms. Adkins was acting in good faith when she made the statement. Kinesis has successfully shown that Mr. Hill and Mr. Robinette cannot overcome the affirmative defense of qualified privilege. Accordingly, we affirm the trial court's grant of summary judgment to Kinesis on this counterclaim.

III.

[8] Next, Mr. Hill and Mr. Robinette contend that the trial court erred by dismissing their claim for fraudulent filing of tax information returns on the basis of lack of subject matter jurisdiction. We disagree with the grounds specified by the trial court but nevertheless affirm its dismissal of the claim.

Under federal law, a person may bring a civil action against any person who willfully "files a fraudulent *information return* with respect to payments purported to be made to any other person[.]" 26 U.S.C. § 7434 (2004) (emphasis added). This Court has held that federal tax matters are not exclusively vested in the federal courts and that state courts have concurrent jurisdiction over such matters. *Griffin v. Fraser*, 39 N.C. App. 582, 588, 251 S.E.2d 650, 654 (1979).

We also noted that "federal courts and the Internal Revenue Service have consistently ignored state court rulings on federal tax questions where the state rulings threatened to impair the uniformity of the national tax scheme." *Id.* Moreover, "[q]uestions of federal taxation are generally matters of substantial complexity, and the federal courts and the Internal Revenue Service have well established procedures for determining tax controversies and construing the meaning of federal tax statutes." *Id.*

Because this Court has previously determined that the federal and state courts have concurrent jurisdiction, the trial court did have subject matter jurisdiction over Mr. Hill's and Mr. Robinette's counterclaim. However, we note our earlier holding that such matters are better left to the consideration of the federal courts. Nothing requires the trial court to exercise the concurrent subject matter jurisdiction; we therefore affirm the trial court's dismissal of this claim, particularly in light of the uncertainty in federal law as to whether the Schedule K-1s complained of by Mr. Hill and Mr. Robinette are payee statements or information returns within the meaning of 26 U.S.C. § 7434.

IV.

[9] Mr. Hill and Mr. Robinette further contend that the trial court erred by dismissing their counterclaims for rescission, a declaratory judgment, and civil conspiracy on the grounds of mootness. We agree.

A matter is rendered moot when "(1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Comer v. Ammons*, 135 N.C. App. 531, 536, 522 S.E.2d 77, 80 (1999) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 59 L. Ed. 2d 642, 649 (1979)).

Here, the trial court concluded that Mr. Hill's and Mr. Robinette's counterclaims for rescission, declaratory judgment, and civil conspiracy were moot because summary judgment had been granted as to Kinesis's claims for breach of the covenant-not-to-compete and the non-solicitation and confidentiality agreements. Because we now reverse that grant of summary judgment, Mr. Hill's and Mr. Robinette's counterclaims for rescission, declaratory judgment, and civil conspiracy are no longer moot. We therefore reverse the trial court's dismissal of these claims.

V.

**[10]** Finally, Mr. Hill and Mr. Robinette argue that the trial court erred by dismissing their counterclaim for unfair and deceptive trade practices for failure to state a claim for which relief may be granted. We disagree.

We have consistently held that the employer/employee relationship does not fall within the intended scope and purpose of the Unfair and Deceptive Trade Practices Act (UDTP). *See, e.g.*, *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). Indeed, we have specifically held that a violation of a covenant-not-to-compete, essentially a breach of contract within the employer/employee relationship, lies outside the scope of the UDTP. *See American Marble Corp. v. Crawford*, 84 N.C. App. 86, 88, 351 S.E.2d 848, 849-50 (affirming summary judgment against a claim alleging that a covenant-not-to-compete violated the UDTP), *disc. review denied*, 319 N.C. 464, 356 S.E.2d 1 (1987). As such, the trial court properly dismissed the UDTP counterclaim for failure to state a claim for which relief may be granted. Accordingly, this assignment of error is overruled.

In sum, we dismiss those portions of Defendants' appeals that concern the trial court's denial of their motion for summary judgment on the Kinesis claims for trade secrets violations, breach of contract on employee solicitation if based in tort, conversion, tortious interference with contract, constructive trust/unjust enrichment, unfair and deceptive trade practices, and an accounting. We further hold that the trial court did not err by dismissing Mr. Hill's and Mr. Robinette's counterclaims for interception of wire communications, defamation, fraudulent filing of tax information returns, and unfair and deceptive trade practices. However, we reverse the trial court's ruling dismissing the counterclaims for rescission, declaratory judgment, and civil conspiracy, and we also reverse the trial court's grant of summary judgment to Defendants on Kinesis's claims for breach of the covenant-not-to-compete, confidentiality, and non-solicitation agreement, and for breach of fiduciary duty.

Dismissed in part, affirmed in part, and reversed in part.

Judges TYSON and CALABRIA concur.