Brady v. Prince, 2015 NCBC 2.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 5996

WILLIAM TYLER BRADY, DVM; BOON )
VENTURES, P.A.; SUMMIT VET GROUP, )
P.C. and SUMMIT HOLDING GROUP, INC., )
        Plaintiffs )
                     )
                     )
        v. )
                     )
MATTHEW PRINCE and KARIN PRINCE, )
        Defendants )

**OPINION AND ORDER
ON MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiffs' Motion to Dismiss Defendants' Counterclaims ("Motion to Dismiss") pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") and Plaintiffs' Motion for Summary Judgment ("Motion for Summary Judgment") pursuant to Rule 56 (collectively, "Motions"); and

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

> *StephensonLaw, LLP, by Philip T. Gray, Esq. for Plaintiffs William Tyler Brady, DVM, Boon Ventures, P.A., Summit Vet Group, P.C. and Summit Holding Group, Inc.*
>
> *Bain, Buzzard & McRae, LLP, by Edgar R. Bain, Esq. and David F. McRae, Esq. for Defendants Matthew Prince and Karin Prince.*

McGuire, Judge.

<u>PROCEDURAL HISTORY</u>

1.     On April 30, 2013, Plaintiffs William Tyler Brady, DVM ("Brady"), Boon Ventures, P.A. ("Boon"), Summit Vet Group, P.C. (Summit Vet") and Summit Holding Group, Inc. ("SHG") filed a Complaint and Motion for Declaratory Judgment (hereinafter "Complaint") against Defendants Matthew Prince and Karin Prince. Plaintiffs' action was designated as No. 13 CVS 5996 by the Clerk of Superior Court of Wake County. The Complaint alleges twelve claims for relief ("Claim(s)") against Defendants: (1) Fraud in the Inducement/Common Law Fraud; (2) Constructive Fraud; (3) Breach of Fiduciary Duty; (4) Self-Dealing; (5) Conversion; (6) Civil Conspiracy; (7) Misappropriation of Trade Secrets; (8) Tortious Interference with Contract; (9) Interference with Prospective Economic Advantage; (10) Unfair and Deceptive Trade Practices; (11) Negligence (in the Alternative) and (12) Punitive Damages.  Additionally, the Complaint seeks a declaratory judgment that Brady is the sole owner of Boon Ventures, P.A., Summit Vet Group, P.C., and Summit Holding Group, Inc. Finally, the Complaint alleges, among other things, that Defendants (a) are in possession of corporate property and client files, (b) have access to corporate bank accounts and (c) are liquidating corporate property.[1]

2.     On June 26, 2013, Defendants filed their Answer and Counterclaim (hereinafter "Defs.' Counterclaim"). Defendants pursue the following seven counterclaims ("Counterclaim(s)"): First Counterclaim (declaratory judgment); Second Counterclaim (breach of contract); Third Counterclaim (tortious breach of contract); Fourth Counterclaim (judicial dissolution); Fifth Counterclaim (sexual harassment); Sixth Counterclaim (judicial dissolution); Seventh Counterclaim (appointment of receiver).

---

[1] The disputed corporate property and assets that Plaintiffs complained of included corporate credit cards, bank accounts, veterinary equipment, trucks and inventory.

3. The Court issued a Temporary Restraining Order and a Preliminary Injunction regarding the protection and preservation of certain corporate assets in dispute between the parties and requiring Defendants to return veterinary practice records to Plaintiff.

4. On August 23, 2013, Plaintiffs filed the Motion to Dismiss seeking dismissal of all Counterclaims pursuant to Rules 12(b)(1), and dismissal of Counterclaims Two, Three, and Five, pursuant to Rule 12(b)(6). The parties filed briefs regarding Plaintiffs' Motion to Dismiss during November and December, 2013.

5. On July 16, 2014, Plaintiffs filed a Motion for Summary Judgment. The Motion for Summary Judgment seeks summary judgment in Plaintiffs' favor on Plaintiffs' claim for a declaratory judgment that Brady is the sole owner of Boon Ventures, P.A., Summit Vet Group, P.C., and Summit Holding Group, Inc.[2] The Motion for Summary Judgment also seeks judgment in Plaintiffs' favor regarding Plaintiffs' claims for breach of fiduciary duty, self-dealing, conversion, civil conspiracy, and unfair and deceptive trade practices, and on Defendants' counterclaims for sexual harassment. Finally, Plaintiffs seek summary judgment regarding any claims attempting to name Plaintiff Summit Holding Group, Inc. as a defendant.

6. On August 29, 2014 Defendants filed their Brief if Opposition to Plaintiffs' Motion for Summary Judgment (hereinafter "Defs.' Brief in Opp.").

7. On December 8, 2014, the Court held a hearing on the Motion for Summary Judgment at which counsel for all parties appeared and made argument.

---

[2] Plaintiffs also ask the Court to grant summary judgment finding that as a matter of law Summit Holding Group, Inc. was practicing veterinary medicine as it is defined by North Carolina law. This relief was not expressly requested in Plaintiffs motion for declaratory judgment contained in their Complaint and, therefore, is deemed not properly before the Court.

FACTUAL BACKGROUND[3]

8.　　Brady is a licensed veterinarian.  Brady was employed with a veterinary clinic in Apex, North Carolina from approximately 1999 – 2004.[4]  Karin Prince was employed with the veterinary clinic as an office employee, and she and Brady got to know one another.  Matthew Prince in Karin Prince's husband.  Neither Karin nor Matthew Prince are licensed veterinarians.

9.　　In early 2012, the Princes, along with Philip Morris ("Morris"), a business colleague, purchased the assets of the Apex veterinary practice at which Karin Prince was employed.[5]  On February 21, 2012, the Princes and Morris formed Boon Ventures, Inc. for the purpose of operating a veterinary clinic.[6]  Boon Ventures, Inc. was initially incorporated as a business corporation under Chapter 55 of the General Statutes.  The Princes claimed that they subsequently learned from the North Carolina Veterinary Medical Board ("NC Board") that a corporation operating a veterinary practice had to be owned exclusively by licensed veterinarians.[7]  Accordingly, on March 12, 2012, the Princes and Morris filed articles of amendment with the North Carolina Secretary of State changing the name of Boon Ventures, Inc. to Boon Ventures, P.A.[8]  They simultaneously notified the NC Board that Dr. Sarah Wheeler ("Wheeler") was the owner of Boon Ventures, P.A. (Boon Ventures, P.A. is hereinafter referred to as "Boon").[9]  The Princes, however, claimed that they still did not understand that they could not have an ownership stake in a veterinary practice under North Carolina law, and believed they and Morris were the owners of Boon.[10]

---

[3] Except as otherwise noted, the following facts appear to the Court to be undisputed.
[4] Brady Dep. pp. 10-11.
[5] K. Prince Dep. pp. 33-35, 53.
[6] Plaintiffs' Exhibits filed in support of summary judgment, Exh. 13 (hereinafter "Pls. Exh.").
[7] K. Prince Dep. pp. 43-45.
[8] *Id.* pp. 44-45, 47; Pls.' Exh. 4.
[9] Pls.' Exh. 14.
[10] K. Prince Dep. pp. 45-46.

10. In May, 2012, Matthew Prince bought out Morris' interest in Boon.[11]

11. In or around June, 2012, Wheeler indicated that she was going leave the Boon practice.[12] Karin Prince contacted Brady and inquired about whether he would be interested in returning to North Carolina with Boon.[13] At the time, Brady owned and operated his own veterinary practice in Nevada.

12. The Princes and Brady discussed going into business together to operate Boon, and Brady agreed to return to Apex. Brady and the Princes both claim that the parties reached an agreement regarding entering into a business venture to operate a veterinary clinic. The parties did not enter into a written agreement regarding their business relationship.[14] Neither has entered into evidence any claimed written or electronic communications between the parties reflecting any of the terms of their discussions or agreement.

13. The parties sharply disagree about the terms of their agreement. Brady contended that the Princes agreed that he would become the sole owner of Boon. In exchange, Brady would (a) provide a veterinary license under which they could operate a veterinary practice, and his 14 years of veterinary experience, (b) contribute his veterinary equipment and a vehicle from his Nevada practice, and (c) assume Boon's debts.[15] Brady claims the Princes agreed that they would be employees and officers of Boon, and that if the practice did well, they would share in the profits of the practice. The parties, however, never reached agreement on a specific split of profits, and the practice never had a profit.[16]

---

[11] Pls.' Exh. 37.
[12] K. Prince Dep. pp. 65-66.
[13] *Id.* pp. 77-79.
[14] Brady Dep. pp. 60, 66.
[15] *Id.* pp. 63-65.
[16] *Id.* pp. 68-70.

14.     The Princes contended that Brady agreed that he and the Princes would be 50/50 owners in Boon.[17]  Brady would be paid a 20% "commission" on his production, and a monthly management fee of $600.[18]  The Princes also agreed to provide Brady with rent-free housing in Apex, North Carolina.[19]

15.     On July 27, 2012, the Princes filed an amendment to Boon's articles of incorporation with the Secretary of State listing Brady as the "veterinarian in charge" and "Operating Owner" of Boon.[20] The Princes simultaneously notified the NC Board that Boon had changed ownership from Wheeler to Brady.[21]  There are no corporate by-laws or other governing corporate documents for Boon in the record.

16.     On July 27, 2012, the Princes also incorporated Summit Vet Group, P.C. ("Summit Vet") under the laws of North Carolina as a professional corporation, and notified the NC Board that Brady was the owner of Summit Vet.[22]  There are no corporate by-laws or other governing corporate documents for Summit Vet in the record.

17.     The Princes were corporate officers of Boon and Summit Vet.[23]

18.     The Princes testified that in the process of establishing the business entities they learned that they could not be the owners of a professional corporation.[24] Accordingly, on July 30, 2012, the Princes incorporated SHG as a non-professional North Carolina corporation.[25]  The Princes were the sole shareholders in SHG.  Karin Prince testified that the plan was to merge Boon into SHG and have SHG own the practices assets, and that

---

[17] K. Prince Dep. 85.
[18] *Id.*
[19] *Id.* pp. 86-87.
[20] Pls.' Exh. 1.
[21] Pls'. Exh. 2.
[22] Pls.' Exhs. 3, 5.
[23] Defs.' Brief in Opp., p. 9; Pls.' Exhs. 1, 12, 27, 28, 29, 30.
[24] K. Prince Dep. p. 46.
[25] Pls.' Exh. 28.

Summit Vet would "hold" the veterinary licenses, but that they never followed through on this plan.[26] Brady contends that he did not know the Princes had created SHG as a separate corporation, and that he believed SHG, Summit Vet and Boon were all a single entity.[27] Brady and the Princes eventually transferred the ownership of trucks owned by Boon to SHG, opened checking accounts in SHG's name, and employed and paid clinic employees under SHG. Defendants admit that SHG, in fact, operated veterinary clinics.[28]

19. Brady returned to North Carolina and began practicing with Boon in August, 2012, at a large animal clinic in Apex. In the fall of 2012, Brady and the Princes opened a second veterinary clinic in Lillington, North Carolina, specializing in small animals.[29] Brady worked primarily at the Apex clinic. Karin Prince was the manager of both the Apex and Lillington clinics.

20. On December 17, 2012, Brady and Karin Prince opened a checking account with BB&T (Account no. 34759).[30] The account was opened under the names of SHG and "Summit Equine Hospital," which was a business name used by the Apex large animal clinic.[31] This account was established primarily for use of the Apex large animal critic. Brady deposited into the account funds from a $350,000 loan he had taken from his father.[32] This account also received money from the operation of the Apex clinic.[33]

21. Brady and Karin Prince also opened a checking account with BB&T under the name "Small Animal Clinic" (Account no. 34945). This account was established

---

[26] K. Prince Dep. 99-100.
[27] Compl. ¶¶ 47, 48.
[28] K. Prince Dep. pp. 90, 116; Brady Dep. p. 78; Pls.' Exhs. 34, 35, 38, 39, 42.
[29] Brady Dep. p. 95.
[30] Pls.' Exh. 7.
[31] *Id.*
[32] Brady Dep. pp. 88-89; K. Prince Dep. p. 165.
[33] K. Prince Dep. p. 165.

primarily for use by the Lillington clinic. The two BB&T accounts, however, became "intermingled" over time.[34]

22. On February 22, 2013, without informing Brady, Karin Prince accessed Account no. 34759 and electronically transferred $110,000 from that account to Account no. 34945.[35] Immediately after making the transfer, Matthew Prince wrote checks to himself in the amounts of $28,000 and $22,000.[36] The Princes admitted that the payments to Matthew Prince were made for the purposes of securing their personal investment in the business because they were concerned about their relationship with Brady.[37] Matt Prince also testified that the payments were, at least in part, to repay "loans" he had made to the businesses.[38]

23. Brady has not offered any evidence as to what the Princes did with the remaining $60,000 of the $110,000 transfer.

24. Brady also alleges that during February –March, 2013, the Princes barred him from the Lillington Clinic under threat of arrest, changed access to bank accounts so that they could not be accessed by the Apex and Lillington practices, seized trucks and other assets belonging to Boon, and engaged in other conduct that breached their duties to Boon and Summit Vet.[39] The Princes admit that they took certain actions with regard to the accounts and computer systems used by the clinics, but they assert that they did nothing "malicious" to interfere with Brady's ongoing operation of the veterinary clinics.[40] Nevertheless, the Lillington clinic was ceased operations in March, 2013.

---

[34] *Id.* pp. 200-01.
[35] Answer, ¶¶ 77, 78; K. Prince Dep. p. 154.
[36] K. Prince Dep. pp. 159-60, 211-12, 227-28; Pl.s' Exhs. 10, 11.
[37] K. Prince Dep. pp. 159, 160, 164, 211, 227.
[38] M. Prince Dep. pp. 249-50.
[39] Pls.' Exh. 23.
[40] K. Prince Dep. pp. 270-77.

25.     On March 29, 2013, the Princes resigned as corporate officers of Boon and Summit Vet.[41]

## DISCUSSION

### A. Plaintiffs' Motion to Dismiss pursuant to Rule 12(b)(1).

26.     In their Motion to Dismiss, Plaintiffs contend that the Princes lack standing to bring claims on behalf of SHG and, accordingly, this Court lacks subject matter jurisdiction.  Plaintiffs argue that because North Carolina law prohibits the Princes from being the owners of stock in a corporation that is practicing veterinary medicine, as defined in G.S. § 90-187.1(7), they could not lawfully own SHG, and, therefore, cannot assert claims on behalf of SHG.  Plaintiffs also argue that the Princes cannot bring claims on behalf of SHG because such claims are derivative and the Princes have not satisfied the requirements for asserting derivative claims under G.S. § 55-7-40, *et. seq.*  In particular, the Plaintiffs argue that the Princes failed to comply with the demand and waiting period requirements in G.S § 55-7-42.

27.     Rule 12 allows for the dismissal at any time of claims over which a court lacks subject matter jurisdiction. *See* Rule 12(b)(1); *Vance Constr. Co. v. Duane White Land Corp.*, 127 N.C. App. 493 (1997). Because standing is a "necessary prerequisite to the court's proper exercise of subject matter jurisdiction," Rule 12(b)(1) is a proper mechanism for a party or the court to raise the question of whether a party has standing to assert a claim. *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 624, 626-27 (2002) (internal quotations and citations omitted). The "burden of proving that standing exists" rests on the claimants. *Id.* at 627.

---

[41] Pls.' Exh. 12.

28.     In this action, it is undisputed that the Matt and Karin Prince owned all of the stock in SHG, and that neither of them were licensed veterinarians. The Princes incorporated SHG as a non-professional corporation, and claim that SHG was supposed to be a "holding company" for certain assets used by the veterinary practices operated by Boon and SHG. [42] Defendants, however, have admitted that SHG "leased property in Lillington, North Carolina and started operating a veterinary clinic under the name Pine Grove Animal Hospital, which was simply [SHG] doing business as Pine Grove Animal Hospital."[43]  Based on the pleadings and the evidence in the record, for the purpose of addressing Plaintiffs' Rule 12(b)(1) motion Court will assume, but does not decide, that SHG was practicing veterinary medicine.

29.     Plaintiffs are correct that North Carolina law prohibits one who is not licensed as a veterinarian from owning "all or part interest in a veterinary medical practice." G.S. § 90-187.10.  Chapter 90, Article 11, however, provides that where non-professionals own all or part of a veterinary medicine practice, the remedies available are the criminal prosecution of the offending individuals, G.S.  § 90-187.12, or for the NC Board to obtain an injunction prohibiting the non-professionals from operating a veterinary practice.  G.S. § 90-187.13. Plaintiffs point to no statute or case law to support the proposition that individuals who improperly own stock in a corporation engaged in the practice of veterinary medicine lack standing to sue on behalf of the corporation or otherwise forfeit any rights of ownership.  Thus, although the allegations in Defendants' counterclaims establish that Princes were the owners of the stock of SHG, and that SHG may have been practicing veterinary medicine, Plaintiffs have failed to establish as a matter of law that the Princes lack standing to bring their counterclaims on behalf of SHG.

---

[42] *See* Counterclaims at p. 22, ¶ 16.
[43] *Id.* at p. 24, ¶ 21.

30. Plaintiffs' argument that the Princes lack standing to assert claims on behalf of SHG because the claims are derivative and the Princes' have failed to meet the requirements for bringing derivative claims on behalf of a corporation also must fail. The Princes have alleged that they own all of the stock in SHG, and that Brady owns none.[44] Defendants do not allege that the counterclaims against Plaintiffs are being brought derivatively on behalf of SHG. Rather, they appear to be direct claims. As the sole shareholders, the Princes have complete control over SHG's decision to initiate a lawsuit. Accordingly, SHG has the authority to file claims in a court. *See* G.S. § 55-3-02.

31. Viewing the allegations in Defendants' counterclaims in the light most favorable to Defendants, Plaintiffs have failed to meet their burden of persuasion on the issue of standing. Accordingly, as to the issue of Defendants' standing to assert claims on behalf of Summit Holding, the Motion to Dismiss should be DENIED.

### B. Plaintiffs' Motion to Dismiss pursuant to Rule 12(b)(6).

32. Plaintiffs also have moved to dismiss Defendant's counterclaims for breach of contract ["SECOND COUNTERCLAIM"] and for sexual harassment ["THIRD and FIFTH COUNTERCLAIMS"] pursuant to Rule 12(b)(6).

33. A Rule 12(b)(6) motion allows a party to test the legal sufficiency of a complaint or counterclaim. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). The Court, in deciding a Rule 12(b)(6) motion, treats well-pleaded allegations as true and admitted. *Id.* However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id.* The facts and permissible inferences set forth in the complaint or counterclaim are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a

---

[44] Answer at p 22, ¶ 15; In addition, Brady admitted he did not own any stock in SHG. (Brady Dep. p. 57).

Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (emphasis original) (citations omitted). A Rule 12(b)(6) motion should be granted when the complaint or counterclaim, on its face, reveals (a) that no law supports the claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

<u>Defendants' Breach of Contract Counterclaim</u>

34.     As a SECOND COUNTERCLAIM, Defendants allege that "[t]he parties entered into an oral contract at the time that Plaintiff Brady returned to Apex, North Carolina to operate the clinic, and such oral agreement of the parties has been breached by Brady."[45] Defendants' further allege that "Defendants and Summit Holding Group, Inc. have been damaged by the breach of the oral contract by Brady."[46] Plaintiffs contend that Defendants' counterclaim for breach of contract should be dismissed pursuant to Rule 12(b)(6) because they are "unaware of any contract of which Brady is in breach."[47] Plaintiffs further argue that any breach of contract claim asserted by SHG should be dismissed because Defendants have not alleged that SHG had a contract with Brady, and have not alleged any other facts that would establish a contractual relationship between Brady and SHG.

35.     "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588 (2005) (internal citations omitted). The North Carolina Court of Appeals has held

---

[45] Defs.' Counterclaim, ¶33.
[46] *Id.*, ¶34.
[47] Pls.' Brief in Support of Motion to Dismiss and Motion for Contempt and Sanctions p. 6.

that, if a complaint alleges these elements, "it is error to dismiss a breach of contract claim under [ ] Rule 12(b)(6)." *Id.* North Carolina recognizes the validity of an oral contract. *See, e.g., Williams v. Jones*, 322 N.C. 42, 52 (1988) (finding a valid oral contract when terms were identifiable, though not reduced to writing); *see also Willis v. Russell*, 68 N.C. App. 424, 428 (1984) (recognizing that acceptance of an offer supported by consideration, and thus the formation of a contract, may be "manifested orally or by conduct").

36.     Taken as true, the allegations in Defendants' counterclaims sufficiently allege the existence of an oral contract between Brady and the Princes, as well as a breach of that contract by Brady.[48] Accordingly, Plaintiffs' motion to dismiss as to Defendants' counterclaim for breach of between Brady and the Princes should be DENIED.[49]

37.     Defendant has not, however, alleged sufficient facts to support a claim for breach of a contract between Brady and SHG.  Accordingly, Plaintiffs' motion to dismiss as to Defendants' counterclaim regarding breach of a contract between Brady and SHG should be GRANTED.

Defendants' Claim for Sexual Harassment

38.     In their THIRD and FIFTH COUNTERCLAIMS, Defendants allege that Brady sexually harassed Karin Prince, and that Karin Prince, Matthew Prince, and SHG should recover damages as a result of the alleged harassment.  At the hearing on December 8, 2014, as well as at a prior hearing of this Court, Defendants' counsel stated that Defendants would dismiss the claims for sexual harassment by filing a notice of voluntary dismissal with the Court.  Additionally, in their Brief in Opposition to Plaintiffs' Motion to

---

[48] In their Complaint, Plaintiffs allege many of the same facts supporting the existence of an oral contract between Brady and the Princes. Compl.  ¶¶ 32-37.

[49] The Court would note that the evidence in the record with regard to Plaintiffs' Motion for Summary Judgment also establish that there are disputed issues of fact regarding the nature and terms of the agreement between Brady and the Princes that would also make summary judgment on this claim inappropriate.

Dismiss, Defendants further represented that they would dismiss the FIFTH

COUNTERCLAIM, alleging sexual harassment.[50] Defendants have, to date, only dismissed

their THIRD COUNTERCLAIM.  Nevertheless, based on Defendants' representations to

this Court that they would dismiss the FIFTH COUNTERCLAIM, the Plaintiffs' motion to

dismiss FIFTH COUNTERCLAIM, alleging sexual harassment, is GRANTED, and

Plaintiffs' motion to dismiss the THIRD COUNTERCLAIM is deemed MOOT.[51]

### C.  Plaintiffs' Motion for Summary Judgment on Their Claims against Defendants.

39.     Rule 56(a) permits "[a] party seeking to recover upon a claim, …, or to obtain

a declaratory judgment" to move for summary judgment in their favor. "Summary judgment

is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that any party is entitled to a judgment as a matter of law.'" *Variety*

*Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting

Rule 56(c)). An issue is "material" if its "resolution . . . is so essential that the party against

whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235 (1972)

(quotations omitted). The moving party bears "the burden of clearly establishing lack of a

triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178,

182 (2011) (quoting *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310 (1976)). The moving

party may meet this burden by "proving an essential element of the opposing party's claim

---

[50] Defs. Brief in Opposition Pls.' Mot. Dismiss & Mot. Contempt and Sanctions (Dec. 11, 2013), p. 6.
[51] North Carolina does not recognize a cause of action for "sexual harassment".  Rather, causes of action based on alleged sexual harassment typically are raised as tort claims for intentional or negligent infliction of emotional distress. The Court assumes that Defendants' causes of action for "sexual harassment" intended to raise a claim for infliction of emotional distress.  Claims for intentional or negligent infliction of emotional distress require that the plaintiff allege that they have suffered "severe emotional distress" as a result of the conduct underlying the claims. *See Fox v. Sara Lee Corp.*, 210 N.C. App. 706, 714 (2011). The Court notes that Defendants have failed to allege that Brady's conduct caused Karin or Matthew Prince severe emotional distress, and that the THIRD and FIFTH COUNTERCLAIMS are dismissable on this basis as well.

does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.,* 365 N.C. at 523 (quoting *Dobson v. Harris*, 352 N.C. 77, 83 (2000)).

### Brady's Standing to Sue on Behalf of Boon, Summit Vet and SHG

40.     Plaintiffs purport to bring claims on behalf of Boon, Summit Vet and SHG.[52] Each of the causes of action alleged in the Complaint are asserted on behalf of the "Plaintiffs" and allege damages caused to the "Plaintiffs."  It is a well-established rule in North Carolina that corporate shareholders cannot bring actions in their individual capacity to enforce causes of action accruing to the corporation.  *Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 658 (1997); *Fulton v. Talbert*, 255 N.C. 183, 185 (1961).  This principle has become known as the *Barger* rule.  There are, however, two exceptions to the *Barger* rule:

> [A] shareholder may maintain an individual action against a third party for
> an injury that directly affects the shareholder, even if the corporation also
> has a cause of action arising from the same wrong, if the shareholder can
> show that the wrongdoer owed him a special duty or that the injury suffered
> by the shareholder is separate and distinct from the injury sustained by the
> other shareholders or the corporation itself.

*Regions Bank v. Reg'l Prop. Dev. Corp.*, 2008 NCBC 8, ¶ 45 (N.C. Super. Ct. Apr. 21, 2008) (quoting *Barger*, 346 N.C. at 658-59).

41.     As a preliminary matter, Brady cannot pursue claims belonging to SHG on behalf of the corporation.  It is undisputed that Brady is not a shareholder in SHG and, accordingly, cannot pursue these claims derivatively.  G.S. §55-7-40, et seq.  Accordingly, to the extent Plaintiffs seek summary judgment in favor of SHG with regard to Plaintiffs' claims against the Defendants, the motion is DENIED.

---

[52] Compl. ¶¶ 132, 137.

42. Boon and Summit Vet may, however, directly pursue the claims for breach of fiduciary duty against the Princes as corporate officers of Boon and Summit Vet. Nothing in the record indicates that these claims are not properly brought directly, pursuant to the corporations' power to sue and be sued in their corporate names. *See* G.S. § 55-3-02(a)(1), § 55B-3(a).

<u>Plaintiffs' Claims for Declaratory Judgment</u>

43. Plaintiffs' have moved for summary judgment with regard to their claims for a declaratory judgment that Brady is the sole owner of Boon and Summit Vet. First, at the December 8, 2014 hearing Defendants' counsel conceded that Brady was the sole and exclusive owner of Boon, and did not argue that the Princes were owners of Summit Vet. The record evidence also establishes that it is undisputed Brady was the sole and exclusive owner of Boon and Summit Vet. Matthew Prince admitted that Brady is the sole owner of these two business entities.[53] In addition, Karin Prince admitted that Brady was the owner of the practices.[54] Documents filed with the North Carolina Secretary of State and North Carolina Veterinary Medical Board also show that Brady was the owner of Boon and Summit Vet.[55] Accordingly, Plaintiffs' motion for summary judgment on their declaratory claims that Brady was the sole owner of Boon and Summit Vet should be GRANTED.

44. Additionally, Plaintiffs have moved for summary judgment with regard to their claim for a declaratory judgment that Brady is the sole owner of SHG. As noted above, however, the record indicates, and it is undisputed that, all of the stock of SHG is owned by Matt and Karin Prince. As such, Plaintiffs' Motion for Summary Judgment as to Plaintiff Brady's sole ownership of SHG should be DENIED.

---

[53] M. Prince Dep. p. 176.
[54] K. Prince Dep. p. 133.
[55] Pls.' Exhs. 2, 3, 5.

<u>Plaintiffs' Claims for Breach of Fiduciary Duty and Self-Dealing</u>

45.    Plaintiffs have asserted claims against the Princes for breach of fiduciary duty (THIRD CAUSE OF ACTION) and self-dealing (FOURTH CAUSE OF ACTION) based on essentially the same allegations, including the Princes' transfer of approximately $110,000 out of a bank account used to operate the veterinary practices and subsequent payment of $50,000 to Matthew Prince.  Plaintiffs allege that as officers of Boon, Summit Vet and SHG, the Princes owed a fiduciary duty to those corporations which they breached by engaging in a number of allegedly unauthorized or fraudulent acts.

46.    A claim for breach of fiduciary duty requires three elements: (1) the existence of a fiduciary duty, (2) the breach of such duty, and (3) that the plaintiff suffered damages as a result of the breach of duty. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). The Princes concede that they were officers of Boon, Summit Vet and SHG.[56]  Accordingly they were in a fiduciary relationship with the corporations and owed a fiduciary duty.  "Officers of a corporation owe a fiduciary duty to the corporation. *Pierce Concrete, Inc. v. Cannon Realty & Constr. Co.*, 77 N.C. App. 411, 413-14, 335 S.E.2d 30, 31 (1985) (citing *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1985)). An officer of a corporation "with discretionary authority" must:

> discharge his duties in good faith, conform to a reasonable standard of care, and act in a manner he reasonably believes is in the best interests of the corporation . . . . Additionally, in North Carolina, an individual may owe a fiduciary duty to the corporation if he is considered to be a *de facto* officer or director, with authority for tasks such as signing tax returns, offering major input as to the company's . . . operation, or managing the company.

*Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 15-16, 652 S.E.2d 284, 295 (2007) (internal citations omitted) (emphasis in original).; see also G.S. §55-8-42.

---

[56] *See* n. 22, *supra*. *See also* Pls.' Exh. 12.

47.     Under North Carolina law corporate officers must act in a manner that they reasonably believe to be in the best interests of the corporation. G.S. §55-8-42. This duty includes an obligation to refrain from self-dealing transactions. *See Vernon v. Cuomo*, 2009 NCBC 6, ¶ 84 (N.C. Super. Ct. Mar. 17, 2009) (finding that actions by corporate directors *and officers* constituted self-dealing).

48.     As a preliminary matter, Brady cannot pursue breach of fiduciary duty and self-dealing claims on behalf of SHG.  The duty owed by officers is owed to the corporation, and breach of fiduciary duty claims against corporate officers are the claims of the corporation. *Underwood v. Stafford*, 270 N.C. 700, 702-703 (1967).   It is undisputed that Brady is not a shareholder in SHG and, accordingly, cannot pursue these claims derivatively. *See* G.S. §55-7-40, *et seq.*

49.     As noted above, however, Brady is the sole owner (shareholder) of Boon and Summit Vet, and may pursue breach of fiduciary duty claims on behalf of those corporations.  Plaintiffs' also allege that Brady's personal and business relationship with Princes led Brady to place "special confidence" and an "immense amount of trust" in the Princes, apparently implying that the Princes' stood in a fiduciary relationship with him individually.  To the extent Brady attempts to state a separate claim for breach of fiduciary duty as an individual as opposed to the sole owner/shareholder in Boon and Summit Vet, the Court finds that genuine issues of material fact exist as to the existence of a fiduciary duty owed to Brady individually. Therefore, to the extent Plaintiffs seek summary judgment based on such an individual duty, the summary judgment motion should be DENIED.

50.     It is undisputed that the Princes' wrote checks to Matthew Prince for $50,000 out of the corporate banking account used by Boon and Summit Vet.  It is undisputed that the funds in the account were comprised almost exclusively of the $350,000 Brady borrowed

from his father to fund the clinics, and from revenues generated by the Apex clinic (Boon). It also is undisputed that the Princes wrote the checks for the sole purpose of trying to recoup at least some of what they believed to be their personal investment of money and time in the veterinary practices. There are no corporate resolutions, loan documents or any other evidence that would establish that the payments were authorized by Boon or Summit Vet, or that the payments were made for any proper corporate purpose. Accordingly, Plaintiffs' motion for summary judgment on their claims for breach of fiduciary duty and self-dealing with regard to the $50,000 payment to Matthew Prince is GRANTED.

51. Plaintiffs, however, have failed to establish what happened to the other $60,000 of the $110,000 transferred by Karin Prince out of the corporate bank account, and the parties' dispute whether this money was spent on behalf of the corporations or was used for improper purposes by the Princes. Accordingly, Plaintiffs' motion for summary judgment on their claims for breach of fiduciary duty and self-dealing with regard to that $60,000 funds transfer is DENIED.

52. To the extent Plaintiffs seek summary judgment with regard to their breach of fiduciary duty and self-dealing claims based upon actions allegedly taken by the Princes other than the payment of $50,000 from those funds to Matthew Prince, the motion is DENIED.

Plaintiffs' Claims for Conversion

53. As a "FIFTH CAUSE OF ACTION", Plaintiffs allege a claim for common law conversion against "the Defendants."[57] The claim for conversion is based on the $110,000 transfer of funds and payments to Matthew Prince, and on various other allegations

---

[57] Compl. ¶¶ 141-43.

regarding conduct by the Princes allegedly involving the improper or fraudulent handling of corporate finances and assets.[58]

54.    In North Carolina, conversion is defined as: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Estate of Graham v. Morrison*, 168 N.C. App. 368, 371 (2005). "At its core, conversion 'is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . .'" *Tai Sports, Inc. v. Hall*, 2012 N.C.B.C. 62, ¶ 108 (N.C. Super. Ct. Dec. 28, 2012) (quoting *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 532 (2001)). The North Carolina Court of Appeals has held that there are "two essential elements [that] are necessary in a complaint for conversion – there must be ownership in the plaintiff and a wrongful conversion by defendant." *Lake Mary, L.P.*, 145 N.C. App. at 532.

55.    The conversion of money additionally requires that the funds converted be specifically traced and identified. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012). This tracing does not require tracing of actual currency, but that "funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529.

56.    As discussed above herein, the Princes admitted that they transferred the $110,000 out of one corporate bank account and into another, and that Matthew Prince wrote checks to himself for $50,000 without proper authorization or purpose. Accordingly, Boon and Summit Vet's motions for summary judgment on the claims for conversion of the

---

[58] Compl. ¶ 141.

$50,000 checks written to Matthew Prince is GRANTED.  Plaintiffs' motion for summary judgment on their claim for conversion regarding any other amounts is DENIED.

Plaintiffs' Claim for Civil Conspiracy

57.    As a sixth cause of action, Plaintiffs allege that the Princes "agreed and conspired" to engage in various actions pursuant to a "common scheme of engorging themselves off the Plaintiffs' assets."[59]

58.    A civil conspiracy requires: "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" *In re Fifth Third Bank, N.A.*, 217 N.C. App. 199, 214 (2011) (internal citations omitted).  Damages in an action for civil conspiracy result from the wrongful acts committed pursuant to the agreement and common scheme rather than from the agreement itself.  *Jones v. City of Greensboro*, 51 N.C.App. 571, 583 (1981).

59.    While Plaintiffs have established that the Princes engaged in unlawful acts that injured Boon and Summit Vet, Plaintiffs have failed to demonstrate to the Court that the facts are undisputed regarding the Princes' having an "agreement" to do the unlawful acts pursuant to a "common scheme".  Accordingly, Plaintiffs' motion for summary judgment with regard to their claim for civil conspiracy should be DENIED.

Plaintiffs' Claim for Unfair and Deceptive Trade Practices

60.    Finally, Plaintiffs seek summary judgment on their claim for unfair and deceptive trade practices under G.S. §75.1-1 et seq.  The Court finds that there are disputed issues of material fact and unresolved questions of law that make summary judgment on

---

[59] Compl. ¶¶ 144 – 48.

this claim inappropriate.  Plaintiffs' motion for summary judgment with regard to their claim for unfair and deceptive trade practices should be DENIED.[60]

CONCLUSION

NOW THEREFORE, based upon the foregoing, it is hereby ORDERED that:

61.     To the extent the Motion seeks to dismiss Summit Holding as a counterclaimant based on Defendants' lack of standing, the Motion is DENIED.

62.     Plaintiffs' Motion to Dismiss Defendants' Second Counterclaim for breach of contract is DENIED.

63.     Plaintiffs' Motion to Dismiss Defendants' Third Counterclaim is deemed MOOT.

64.     Plaintiffs' Motion to Dismiss Defendants' Fifth Counterclaim is GRANTED.

65.     Plaintiffs' Motion for Summary Judgment on their declaratory claims that Brady is the sole owner of Boon and Summit Vet is GRANTED.

66.     Plaintiffs' Motion for Summary Judgment on their declaratory claim that Brady is the sole owner of SHG is DENIED.

67.     Plaintiffs' Motion to for Summary Judgment in its favor on Plaintiffs' Third Cause of Action for breach of fiduciary duty and Fourth Cause of Action for self-dealing is GRANTED IN PART and DENIED IN PART as set out in greater detail above.

---

[60] Plaintiffs argue that breach of fiduciary duty is a *per se* violation of G.S. § 75-1.1 entitling them to summary judgment on the unfair and deceptive trade practices claim. The only law Plaintiffs cite in support of this per se theory is *Sara Lee Corporation v. Carter*, 351 N.C. 27 (1999).  Plaintiffs argument is misplaced, as *Sara Lee* did not hold that a breach of fiduciary duty was a per se violation of the statute.  To the contrary, the Supreme Court expressly stated that it had to "determine if defendant's fraudulent acts and breach of fiduciary duty constitute unfair and deceptive trade practices under N.C.G.S. § 75-1.1".  The Court then engaged in a thorough analysis of whether the defendant's alleged breach of fiduciary duty was "in or affecting commerce" such that it would be the basis for a claim under G.S. § 75-1.1.

68.     Plaintiffs' Motion to for Summary Judgment in its favor on Plaintiffs' Fifth Cause of Action for conversion is GRANTED IN PART and DENIED IN PART as set out in greater detail above.

69.     Plaintiffs' Motion to for Summary Judgment in its favor on Plaintiffs' Fifth Cause of Action for civil conspiracy is DENIED.

70.     Plaintiffs' Motion to for Summary Judgment in its favor on Plaintiffs' Tenth Cause of Action for violation of the North Carolina Unfair and Deceptive Trade Practices Act is DENIED.

71.     Except as specifically provided herein, Plaintiffs' Motion to Dismiss and Motion for Summary Judgment are DENIED.

72.     The Court will set this matter for trial and will establish deadlines for pre-trial matters in a separate order.

This the 7th day of January, 2014.