Woodcock v. Cumberland Cnty. Hosp. Sys., Inc., 2022 NCBC 2.

STATE OF NORTH CAROLINA
GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 5216

MICHAEL G. WOODCOCK; CAROL
WADON; CAMILLE WAHBEH; and
GEORGE DEMETRI, Individually
and Derivatively on behalf of
Fayetteville Ambulatory Surgery
Center Limited Partnership,

Plaintiffs,

v.

CUMBERLAND COUNTY
HOSPITAL SYSTEM, INC.; CAPE
FEAR VALLEY AMBULATORY
SURGERY CENTER, LLC;
SURGICAL CARE AFFILIATES,
LLC; and NATIONAL SURGERY
CENTERS, LLC,

Defendants,

and

FAYETTEVILLE AMBULATORY
SURGERY CENTER LIMITED
PARTNERSHIP,

Nominal
Defendant.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
DECLARATORY JUDGMENT**

THIS MATTER is before the Court on Plaintiffs' Motion for Declaratory Judgment. ("Motion for Declaratory Judgment" or "Motion," ECF No 49.)

THE COURT, having considered the Motion for Declaratory Judgment, the parties' briefs and arguments, the applicable law, and all appropriate matters of record, CONCLUDES that the Motion should be DENIED, without prejudice, for the reasons set forth below.

*Douglas S. Harris for Plaintiffs Michael G. Woodcock, Carol Wadon, Camille Wahbeh, and George Demetri.*

*K&L Gates LLP by Marla T. Reschly, Susan K. Hackney, and Daniel D. McClurg for Defendants Cumberland County Hospital System, Inc. and Cape Fear Valley Ambulatory Surgery Center, LLC.*

*Bradley Arant Boult Cummings LLP by Jonathan E. Schulz and Christopher C. Lam for Defendants Surgical Care Affiliates, LLC and National Surgery Centers, LLC.*

Davis, Judge.

## INTRODUCTION

1.     This case relates to the ownership and operation of Fayetteville Ambulatory Surgery Center Limited Partnership ("FASC"), which operates an ambulatory surgery center in Fayetteville, North Carolina, and is named as a Nominal Defendant in this action.  (ECF No. 3.2, Articles III–V, at pp. 6–7.)

2.     This matter arises out of a disputed 1 April 2019 sale by Defendant National Surgery Centers, LLC ("NSC") of its 100% equity ownership in the general partner of FASC—Defendant Cape Fear Valley Ambulatory Surgery Center, LLC[1] ("CFVASC")—to Defendant Cumberland County Hospital System, Inc. ("CCHS"). (ECF No. 15, at ¶ 17) (hereinafter, the "April 2019 Transaction").

3.     Plaintiffs—all limited partners of FASC—have now filed a Motion for Declaratory Judgment, challenging the propriety of the April 2019 Transaction and

---

[1] Prior to April 2019, CFVASC was known as "NSC Fayetteville, LLC," which was previously known as "NSC Fayetteville, Inc."  (ECF No. 15, at ¶ 6.)  NSC Fayetteville, LLC was renamed CFVASC on 17 April 2019.  (*Id.*)  For purposes of clarity, the Court will refer to all iterations of the general partner of FASC as CFVASC.

its ramifications. For the reasons set out below, the Court concludes that the Motion is premature and should be denied without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

4. FASC[2] was formed in November 1991 with CFVASC serving as the sole general partner. (ECF No. 63.1, at ¶ 6.) Although the limited partnership agreement controlling FASC has been amended several times, the version of the agreement relevant to this dispute is dated 1 October 1995 and entitled "Second Amended and Restated Limited Partnership Agreement." ("1995 LP Agreement," ECF No. 3.2.)

5. When the 1995 LP Agreement was executed, FASC was comprised of CFVASC as the general partner along with twelve limited partners. (ECF No. 3.2, at Sched. A.; ECF No. 63.1, at ¶ 8.) CFVASC (then named NSC Fayetteville, Inc.) was a wholly owned subsidiary of Defendant National Surgery Centers, LLC ("NSC"), which, in turn, is a wholly owned subsidiary of Defendant Surgical Care Affiliates, LLC ("SCA"). (ECF No. 63.1, at ¶ 10.) Among the twelve limited partners were Plaintiffs Michael Woodcock, Carol Wadon, Camille Wahbeh, George Demetri, and Defendant CCHS.[3] (ECF No. 3.2, at Sched. A.)

---

[2] As this Opinion makes painfully clear, this case involves a complex series of events involving a multitude of different entities, thereby necessitating the use of acronyms for the various entities. In their respective briefs, the parties often utilize differing acronyms to refer to the same entity, a practice that only makes the Court's job more difficult. Therefore, the parties are directed to use the nomenclature and acronyms set out in this Opinion in all future filings with this Court when referencing the various entities involved in this action.

[3] Plaintiffs are medical doctors in Fayetteville, North Carolina. (ECF No. 3.2, at Sched. A.) Defendant CCHS is a North Carolina non-profit corporation that has surgical centers and operating rooms located in Cumberland County, North Carolina. (ECF No. 15, at ¶ 3.)

6.     At some point in time, NSC and SCA made known their intent to sell CFVASC.  (ECF No. 63.1, at ¶ 11.)  Woodcock and CCHS separately engaged in negotiations with NSC and SCA in an effort to acquire CFVASC.  (*Id*. at ¶ 12.)  NSC and SCA ultimately decided to sell the equity in CFVASC to CCHS, precipitating the April 2019 Transaction.  (*Id*. at ¶¶ 13, 16.)

7.     As a precursor to the April 2019 Transaction, CCHS conveyed all of its then-owned limited partner shares to CFVASC pursuant to a Contribution Agreement (ECF No. 3.6 [SEALED]), which purported to divest CCHS of its limited partner status in FASC.  (ECF No. 63.1, at ¶ 15; ECF No. 15, at ¶ 17.)

8.     Immediately thereafter, pursuant to an Equity Purchase Agreement (ECF No. 3.5 [SEALED]), CCHS purportedly purchased from NSC 100% of the equity of CFVASC, which ultimately included the purchase of the same limited partner shares CCHS had previously conveyed to CFVASC.  (ECF No. 15, at ¶ 17.)

9.     As of the present date, Plaintiffs remain limited partners of FASC, and CCHS purports to be the 100% owner of CFVASC—the general partner of FASC.  (*Id*. at ¶¶ 5, 14.)  Nevertheless, Plaintiffs argue that CCHS "does not have lawful authority to own 100% of [CFVASC] or to exercise any authority over [CFVASC]." (*Id*. at ¶ 146.)

10.     Among other things, Plaintiffs contend that the April 2019 Transaction and CCHS's resulting ownership of the general partner of FASC breaches various provisions of the 1995 LP Agreement and that the methods utilized to effectuate the

transaction were purposefully crafted to sidestep various terms of the 1995 LP Agreement. (*Id*. at ¶¶ 18–29.)

11. The same factual background underlying this lawsuit was the subject of a prior lawsuit involving all the parties to this action except for Defendants NSC, SCA, and Nominal Defendant FASC. *See Woodcock v. Cumberland Cty. Hosp. Sys., Inc.*, Case No. 2019-CVS-8790 (N.C. Super. Ct.) (the "Prior Lawsuit"). The Prior Lawsuit was voluntarily dismissed without prejudice by Plaintiffs pursuant to Rule 41 of the North Carolina Rules of Civil Procedure on 24 November 2020. (*Id*. at ECF No. 85.)

12. On 11 May 2021, Plaintiffs filed the Complaint in the present action, which purports to assert eleven causes of action both individually and derivatively on behalf of FASC. (ECF No. 15, at pp. 7–64.) Pertinent to the present Motion, Plaintiffs' eleventh cause of action in the Complaint seeks a declaratory judgment that CCHS "does not have lawful authority to own 100% of [CFVASC]."[4] (*Id*. at p. 66.)

13. Each of the named Defendants filed an answer to the Complaint on 23 September 2021. (ECF Nos. 45–46.)

14. On 8 November 2021, Plaintiffs filed a Motion for Declaratory Judgment, seeking a declaration from the Court that (a) the April 2019 Transaction was "not effective"; (b) there is currently no legally valid general partner of FASC; (c)

---

[4] Plaintiffs' eleventh cause of action also seeks a declaration that a "July 1, 2008 'Cash Management Agreement' is not now and never has been in lawful effect because it never was authorized by a two-thirds supermajority written vote by the Limited Partners." (ECF No. 15, at p. 66.) However, this requested declaration is not relevant to the present Motion.

CCHS cannot lawfully cast any general partner votes or any limited partner votes; (d) CCHS has "constructively resigned its position in control of 100% of the equity of [CFVASC] such that the position of General Partner may be refilled pursuant to the terms of the [1995 LP Agreement]"; and (e) the 1995 LP Agreement "may be modified or amended by a Two-Thirds in interest written consent of the Limited Partners without the consent of the General Partner by reason that the General Partner's position is vacant." (ECF No. 49, at pp. 12–13.) In support of their Motion, Plaintiffs filed numerous supporting exhibits, including affidavits and portions of deposition testimony from the Prior Lawsuit. (*See, e.g.*, ECF Nos. 50.4, 50.10.)

15. The Court entered a Case Management Order on 10 November 2021, giving the parties approximately eight months to conduct fact discovery and two additional months to conduct expert discovery with a post-discovery dispositive motion deadline of 31 October 2022. (ECF No. 52, at pp. 5, 11.)

16. On 12 January 2022 the Court held a hearing on the Motion, which is now ripe for resolution.

**LEGAL STANDARD**

17. Plaintiffs bring the Motion pursuant to the Declaratory Judgment Act, N.C.G.S. § 1-253, et seq. (ECF No. 49, at p. 1), which "affords an appropriate procedure for alleviating uncertainty in the interpretation of written instruments and for clarifying litigation." *Hejl v. Hood, Hargett & Assocs.*, 196 N.C. App. 299, 302 (2009) (cleaned up).

18. "North Carolina courts have held that summary judgment is an appropriate procedure in an action for declaratory judgment." *Id.* at 303; *see N.C. State Conf. of the NAACP v. Moore*, 273 N.C. App. 452, 466–67 (2020); *Medearis v. Trustees of Myers Park Baptist Church*, 148 N.C. App. 1, 4 (2001); *Bellefonte Underwriters Ins. Co. v. Alfa Aviation*, 61 N.C. App. 544, 547 (1983); *Montgomery v. Hinton*, 45 N.C. App. 271, 273 (1980); *see also* N.C.G.S. § 1A-1, Rule 56(a) ("A party seeking . . . to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.").

19. Accordingly, in evaluating Plaintiffs' Motion for Declaratory Judgment, the Court deems it appropriate to utilize the standards applicable to the determination of a summary judgment motion. *See Hejl*, 196 N.C. App. at 303 ("[O]n review of a declaratory judgment action, we apply the standards used when reviewing a trial court's determination of a motion for summary judgment.").

20. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in its favor. *See Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 556 (2020); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011).

21.     The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002).  If the moving party carries this burden, the opposing party "may not rest upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins. Co.*, 356 N.C. at 579.  "An issue is genuine if it can be proven by substantial evidence and a fact is material if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982) (cleaned up).

22.     "When the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578 (1985).  The movant "must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from the evidence; and that there is no standard that must be applied to the facts by the jury." *Kidd v. Early*, 289 N.C. 343, 370 (1976).  For that reason, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984); *see also Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985).

## ANALYSIS

23.     As a threshold matter, Defendants argue that any substantive ruling on the merits of the Motion at this stage—the beginning of the discovery period—would be premature.  Defendants contend that discovery is necessary both in order for them

to be able to effectively respond to the Motion and for the Court to appropriately rule on the Motion.  (ECF No. 60, at pp. 5–9; ECF No. 62, at pp. 8–14.)

24.     "Ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so."  *Conover v. Newton*, 297 N.C. 506, 512 (1979) (citations omitted); *see also Premier, Inc. v. Peterson*, 232 N.C. App. 601, 610 (reversing and remanding a trial court's entry of summary judgment where the motion for summary judgment was made 40 days after the entry of the case management order, reasoning that the factual record was insufficiently developed for the court to make such a determination); *Ussery v. Taylor*, 156 N.C. App. 684, 686 (reversing the premature entry of summary judgment and remanding to give the parties "the opportunity to further develop the facts").

25.     Here, the Motion for Declaratory Judgment—in essence, a motion for partial summary judgment—was filed four days prior to the Court's entry of the Case Management Order, which provided for approximately eight months of fact discovery and additional time for expert discovery.  The parties represent that as of the present date no discovery has yet been conducted.  Although some discovery took place in the Prior Lawsuit, the present action involves two new defendants (NSC and SCA), several new claims (including the eleventh cause of action in the Complaint seeking a declaratory judgment), and new factual allegations—at least some of which appear to be in dispute at this early stage of the litigation.

26. Nevertheless, Plaintiffs contend that "there is only one reasonable inference that can be drawn from the facts of this case"; "there is reasonably nothing more to discover that would justify, explain or excuse" the April 2019 Transaction; and this Court should not "let the case drift along for nine months while [CCHS] continues to work its plan for the destruction of FASC from the inside." (ECF No. 64, at pp. 10–12.)

27. The Court agrees with Defendants for several reasons. First, at this early stage of the litigation, it is simply too early for the Court to tell whether there is only "one reasonable inference" that can be drawn from the facts (as Plaintiffs present them) or that there is "nothing more to discover" that could impact this "one reasonable inference." (ECF No. 64, at pp. 10–11.) Indeed, Defendants SCA and NSC have set out in their brief a non-exhaustive list of twenty relevant topics that they contend require a developed factual record before the Court can reach a determination regarding the merits of the Motion. (ECF No. 60, at pp. 6–8.)

28. Second, Plaintiffs have failed to convince the Court of the need for an immediate ruling on the Motion. Initially, Plaintiffs argued that the urgency surrounding the Motion was the "rapidly approaching" 31 December 2021 dissolution date of FASC as set forth in the 1995 LP Agreement. (ECF No. 51, at p. 2.) Article VI of the 1995 LP Agreement states: "The term of the Partnership shall be from the date of filing of the Certificate until December 31, 2021, unless extended or sooner liquidated or dissolved in accordance with this Agreement or applicable law." (ECF No. 3.2, at Art. VI.) The 1995 LP Agreement further states that "immediate

dissolution" of FASC will occur upon "[t]he expiration of the term of the Partnership Agreement as provided in Article VI of this Agreement, unless the General Partner [CFVASC] and Two-Thirds in Interest of the Limited Partners agree to extend the term of the Partnership past the date set forth in Article VI[.]" (ECF No. 3.2, at § 16.2(d).) Plaintiffs' concern was that CCHS, "through its control of [CFVASC]," was "coercively withholding [CFVASC's] consent" to an extension of FASC despite the "rapidly approaching deadline." (ECF No. 51, at pp. 2–3.) However, at some point on or after 12 November 2021, CFVASC, in its capacity as general partner, and two-thirds in interest of the limited partners extended the term of FASC from 31 December 2021 through and including 31 December *2022*. (*See* ECF No. 61.1; ECF No. 63.2.) At the hearing on the Motion, counsel for Plaintiffs conceded that the dissolution date had, in fact, been properly extended. Accordingly, this argument is now moot. The Court is also of the view that Plaintiffs' *current* argument as to the urgency of this Motion—*i.e.*, that CCHS plans the "destruction of FASC from the inside" (ECF No. 64, at p. 10)—is merely speculative at the present time.

29.     As succinctly put by our Court of Appeals in a case similarly involving a premature motion, "[w]hile the Court does not foreclose the possibility that summary judgment may ultimately be appropriate in this matter, the Court concludes that such a determination cannot be properly made at the present time in light of the incomplete factual record that currently exists." *Premier Inc.*, 232 N.C. App. at 610. Therefore, the Court CONCLUDES that the Motion for Declaratory Judgment should be DENIED, without prejudice, as premature.

30.     The Court also notes one additional concern with the Motion—that is, the fact that the declaratory relief sought in the Motion is significantly broader than that sought in the eleventh cause of action in the Complaint containing Plaintiffs' request for declaratory relief.

31.     Our Court of Appeals has previously held that "a declaratory judgment is a separate and independent action" and may not be "commenced by a motion in the cause." *N.C. State Bar v. Phillips*, 2020 N.C. App. LEXIS 795, at *10 (2020) (unpublished) (quoting *Home Health & Hospice Care, Inc. v. Meyer*, 88 N.C. App. 257, 262 (1987)). Accordingly, Plaintiffs' ability to seek declaratory relief in this case via a motion cannot exceed the scope of the declaratory relief actually sought in their Complaint. *See Brady v. Prince*, 2015 NCBC 2, at *5, n.2 (N.C. Super. Ct. Jan. 7, 2015) ("Plaintiffs also ask the Court to grant summary judgment finding that as a matter of law [Defendant] was practicing veterinary medicine as it is defined by North Carolina law. This relief was not expressly requested in Plaintiffs['] motion for declaratory judgment contained in their Complaint and, therefore, is deemed not properly before the Court.").

32.     Here, Plaintiffs' declaratory judgment claim in the Complaint seeks, in pertinent part, a declaration from the Court that:

> [CCHS] does not have lawful authority to own 100% of the General Partner or to exercise any authority over the General Partner by reason that neither [CCHS], NSC, SCA, nor the General Partner ever obtained a two-third supermajority vote in writing from the Limited Partners[,] such as would have allowed a modification or agreement of the 1995 [LP] Agreement as was required before [CCHS] could obtain such ownership or authority[.]

(ECF No. 15, at p. 66.)

33.     In contrast, Plaintiffs' Motion for Declaratory Judgment seeks the following declarations from the Court:

1.  Declare that [CCHS's] purchase of 100% of equity of the General Partner was not effective pursuant to Section 15.9 of the 1995 [LP] Agreement and further declare that the General Partnership is vacant by reason that NSC has contractually ceded any control over the General Partner and [CCHS] is incapable of lawfully assuming control of the General Partner. Therefore, there is currently no lawful General Partner.

2.  Declare that [CCHS], by reason of its claim of 100% of the equity of the General Partner, is not an effective claim of ownership pursuant to Section 15.9, and therefore, cannot lawfully cast any General Partner votes nor cast any Limited Partner votes for any Limited Partner Units ostensibly controlled by the General Partner including, but not limited to, those Limited Partner Units given by [CCHS] without consideration to the General Partner pursuant to the 1 April 2019 Contribution Agreement.

3.  Declare that [CCHS] has constructively resigned its position in control of 100% of the equity of the General Partner such that the position of General Partner may be refilled pursuant to the terms of the 1995 [LP] Agreement contained under Article XVI.

4.  Declare that the 1995 [LP] Agreement may be modified or amended by a Two-Thirds in interest written consent of the Limited Partners without the consent of the General Partner by reason that the General Partner's position is vacant. This authority to amend shall include the ability to vote a continuation of FASC operations after December 31, 2021 to a date to be determined by a Two-Thirds in interest written consent of the Limited Partners.

5. For such other and further relief as the Court may deem just and proper.

(ECF No. 49, at pp. 12–13.)

34. Although the types of declaratory relief sought in the Complaint and in the Motion both relate to the April 2019 Transaction and therefore contain some degree of factual overlap, the relief sought in the Motion is significantly broader than that sought in the Complaint. Accordingly, even if (1) the Motion was not premature, and (2) Plaintiffs were able to convince the Court of the merits of their arguments, it would nevertheless be improper for this Court to grant Plaintiffs the full relief sought in the Motion based on the limited declaratory relief sought in the eleventh cause of action in the Complaint.

## CONCLUSION

THEREFORE, IT IS ORDERED that Plaintiffs' Motion for Declaratory Judgment is DENIED, without prejudice.

SO ORDERED, this the 20th day of January, 2022.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases