Kadah v. Paladin Drones, Inc., 2026 NCBC 47.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV050925-590

KHALED KADAH,

      Plaintiff/
      Counterclaim-
      Defendant,

    v.

PALADIN DRONES, INC.,

      Defendant/
      Counterclaim-
      Plaintiff,

**ORDER AND OPINION ON PALADIN
DRONES, INC.'S PARTIAL MOTION
TO DISMISS**

1. This matter is before the Court on defendant Paladin Drones, Inc.'s partial motion to dismiss certain of the causes of action filed by plaintiff Khaled Kadah. (ECF No. 9).

2. With its motion, Paladin moves to dismiss Kadah's first cause of action for breach of contract and fourth cause of action for alleged violations of N.C. Gen. Stat. § 75–1.1 *et seq.* (ECF No. 9).

3. Having considered the complaint, the motion, the written arguments of counsel, and applicable law, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion as set forth below.

> *Womble Bond Dickinson, LLP by Mark Henriques, Michael Ingersoll, and Philip D. Mayer, for Plaintiff Khaled Kadah.*
>
> *Grellas Shah, LLP by Dhaivat Shah and Jack Bussell, and Nelson Mullins Riley & Scarborough, LLP by Joseph Matthew Gorga and Jordan Koonts, for Defendant Paladin Drones.*

Houston, Judge.

## BACKGROUND

1. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the most relevant factual allegations in the complaint and accepts the well-pleaded factual allegations as true for purposes of this Order and Opinion.

4. Paladin is a Delaware corporation based in Texas but doing business in North Carolina, with its business consisting of manufacturing autonomous drone systems and related technology for public-safety markets. (ECF No. 3, ¶¶ 2, 5).

5. In September 2023, Paladin hired Kadah as its Director of Sales. (ECF No. 3, ¶ 6). That same year, Kadah opened Paladin's Charlotte, North Carolina office, and Paladin posted record sales. (ECF No. 3, ¶ 6–7).

6. In February 2024, Kadah accepted a promotion to the position of Vice-President of Sales for Paladin. (ECF No. 3, ¶ 8 & Ex. A). In conjunction with that promotion, Paladin CEO Divyaditya Shrivastava ("**Divy**") sent Kadah an undated offer letter ("**2024 Offer Letter**"). (ECF No. 3, ¶¶ 8–9 & Ex. A).

7. The primary terms of the 2024 Offer Letter that Kadah accepted were as follows:

> Equity: 4%, and protected against dilution through a Series A round, backdated to your starting date of Sept 6th 2023,
> Salary: $80k
> Commission: 10% for deals you personally close, 3% of all other deals closed.
>
> As discussed, your equity will be subject to you helping the company achieve at minimum $1.5m signed and closed ARR before EOY 2024. In your position of VP of Sales, my metric expectation and your target is for the company to reach $3.5M in

ARR by EOY 2024. If these goals are not met, your equity and offer will revert to your previously set Sales Director role.

(ECF No. 3, ¶¶ 9–10 & Ex. A).

8. Divy also "verbally reiterated" the "promise of equity and non-dilution." (ECF No. 3, ¶ 9).

9. In April 2024, Paladin raised $3 million pursuant to a SAFE agreement with Gradient Ventures, IV, L.P. However, "no additional equity was issued to" Kadah. (ECF No. 3, ¶ 12).

10. In May 2025, Paladin sought to raise an additional $9 million in capital by initiating a Series Seed Preferred round headed by Long Journey Fund IV, L.P. ("**Long Journey**" or "**Long Journey Financing**"). (ECF No. 3, ¶ 14). Kadah alleges that Long Journey imposed on Paladin a "requirement of 'leadership alignment.'" (ECF No. 3, ¶ 15).

11. According to Kadah, this requirement and Paladin's desire "to ensure Kadah's continued cooperation during the Long Journey Financing" led Paladin and Kadah to enter into an oral agreement in "early June 2025" ("**Oral Agreement**"). (ECF No. 3, ¶ 15).

12. According to Kadah, the material terms of the Oral Agreement were that:

a. Paladin would pay Kadah a cash bonus of $250,000 following the closing of the Long Journey Financing;

b. Paladin would pay Kadah additional compensation of $160,000 over two years, paid by "increasing Kadah's base salary to $80,000 per year,

locked for twenty-four months," which Kadah would be entitled to receive even if his employment with Paladin terminated during that time ("**Additional Compensation**");[1]

c. following the close of the Long Journey Financing, a "re-up" of Kadah's equity in Paladin, such that "Kadah would still hold no less than sixty percent (60 %) of his originally promised antidilution position (i.e., not more than forty percent (40 %) dilution)";

d. Kadah would prospectively waive further anti-dilution rights and continue working to increase investment in Paladin; and

e. Kadah would remain "aligned" with Paladin's leadership team and would not interfere with the Long Journey Financing. (ECF No. 3, ¶ 15).

13. Although Kadah states that a valid Oral Agreement was entered into in June 2025, he alleges "Kadah and Paladin memorialized the material terms of the [Oral Agreement] in multiple writings" across subsequent months. (ECF No. 3, ¶ 17).

14. Those subsequent writings (collectively, "**Subsequent Writings**") include:

a. A draft "Offer Letter Agreement" prepared by Paladin's legal counsel and dated 11 June 2025 and;

b. "A revised draft circulated between the parties";

---

[1] While this allegation indicates that Kadah's salary would be *increased* to $80,000 per year, the Court notes that the 2024 Offer Letter stated that Kadah's salary would be $80,000. (ECF No. 3, Ex. A). If the Additional Compensation were to total $160,000, as Kadah alleges, and Kadah's base salary were "increased to" $80,000, this implies that Kadah's pre-Additional-Compensation salary was $0. The record is silent on whether Kadah's 2024 salary was, in fact, $80,000, or if that salary was subsequently lowered or altered in some way.

c. Emails between attorneys for the parties from 23–25 July 2025, "acknowledging the parties' agreement on the $250,000 Bonus, salary increase, and equity re-up"; and

d. Kadah's email to the CEO, Divy, "confirming mutual assent to the agreed terms" and dated 31 July 2025.

(ECF No. 3, ¶ 17; ECF No. 9, Exs. A–D).[2]

15. According to Kadah, Divy acknowledged the Oral Agreement and its terms on multiple occasions in June and July 2025. Nevertheless, Kadah maintains that Paladin declined to formalize the Oral Agreement in writing until after the Long Journey Financing deal closed. (ECF No. 3, ¶¶ 15, 17–18, 20).

16. Kadah maintains that he complied with the terms of the Oral Agreement but resigned his employment on 4 August 2025 because Paladin declined to execute a written employment contract. (ECF No. 3, ¶¶ 19, 22).

17. When the Long Journey Financing closed in August 2025,[3] Paladin received $9 million in new capital. Notwithstanding the successful fundraising, Kadah contends that Paladin still refused to produce a written contract formalizing

---

[2] While a motion to dismiss considers the sufficiency of the factual allegations in the complaint, the Court may consider documents that are referenced in, or incorporated into the complaint, regardless of the party providing the documents. *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001); *Packard v. Sei Priv. Trust Co.*, 2025 NCBC LEXIS 69, at *7–8 (N.C. Super. Ct. June 10, 2025). Accordingly, the Court may appropriately consider the documents provided by Paladin with its motion to dismiss to the extent that they were referenced and relied upon in Kadah's complaint.

[3] The complaint is silent as to the specific date in "August 2025" when the Long Journey Financing closed. (ECF No. 3, ¶ 23). Accordingly, it is unclear on the face of the complaint if Kadah resigned before or after the Long Journey Financing deal closed.

the Oral Agreement. Moreover, Paladin declined to pay Kadah a $250,000 bonus, deliver on the equity re-up terms, or honor the non-dilution provision. Instead, Paladin requested that Kadah execute a written release that eliminated the anti-dilution protections, required a general release of Kadah's claims, and imposed new stock transfer restrictions on Kadah. Kadah rejected the terms enumerated in the release and demanded that the Oral Agreement be honored. (ECF No. 3, ¶¶ 23–27).

18. Kadah maintains that Paladin's refusal to execute a written agreement memorializing the terms of the Oral Agreement was a deliberate tactic that had the effect of "stringing Kadah along to secure his cooperation, misrepresenting that a written agreement was forthcoming." (ECF No. 3, ¶ 31).

19. Kadah initiated this action on 24 September 2025, asserting causes of action for (i) breach of contract under the Oral Agreement, (ii) violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*, (iii) breach of contract for failure to issue stock, and (iv) violations of N.C. Gen. Stat. § 75–1.1 *et seq.* (*See generally* ECF No. 3, ¶¶ 32–53).

20. On 27 October 2025, Paladin filed its partial motion to dismiss pursuant to Rule 12(b)(6) as to Kadah's first breach of contract cause of action and his chapter 75 cause of action. (ECF No. 9). Paladin has not moved to dismiss Kadah's wage and hour act cause of action or his cause of action for breach of contract for failure to issue stock.

21. On 28 October 2025, this case was designated as a mandatory complex business case and assigned to the undersigned Business Court judge. (ECF Nos. 1–2).

22. The motion is fully briefed and ripe for resolution, and the Court resolves the motion on the briefing pursuant to Rule 7.4 of the Business Court Rules, with each party having had a full opportunity to brief the motion.

## ANALYSIS

23. When considering a Rule 12(b)(6) motion to dismiss, the Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted).

24. The Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991) (alterations in original)).

25. Further, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers" regardless of the party that presents them. *Oberlin*, 147 N.C. App. at 60 (citation

omitted). The Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citations omitted).

26. Dismissal on a Rule 12(b)(6) motion is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin*, 371 N.C. at 615 (citations omitted).

27. The Court addresses the causes of action at issue in turn.

## A. Breach of Contract – Oral Agreement

28. In relevant part, Kadah asserts that, regardless of written exchanges, the parties reached an oral contract in the form of the Oral Agreement. He then contends that Paladin breached the Oral Agreement "by refusing to pay the $250,000 Bonus, refusing to pay the Additional Compensation, and refusing to issue the Stock." (ECF No. 3, ¶¶ 15, 35; ECF No. 21 at 4).

29. In support of its motion to dismiss, Paladin argues that (i) the Oral Agreement is not a valid, enforceable contract; and (ii) alternatively, even if the Oral Agreement is valid, Kadah breached the material terms of that agreement because he did not remain "aligned" with leadership because he threatened to quit if no written contract was executed. (ECF No. 10 at 3–8).

30.     "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588 (2005).

31.     Ordinarily, to plead the existence of a valid contract, "this means that the complaint must allege offer, acceptance, and consideration." *Lannan v. Bd. of Governors of Univ. of N.C.*, 387 N.C. 239, 250 (2025) (citing *Dodds v. St. Louis Union Tr. Co.*, 205 N.C. 153, 156 (1933)).

32.     Under North Carolina's notice pleading standard, "stating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *4 (N.C. Super. Ct. June 19, 2019).

33.     Kadah alleges that he and Paladin, through its CEO, reached the Oral Agreement in June 2025 and that the parties agreed on the material terms of the Oral Agreement, including payment of a $250,000 bonus, payment of the $160,000 Additional Compensation over two years via an increased base salary, a "re-up" of equity and stock, waiver of anti-dilution rights, and alignment with leadership. (ECF No. 3, ¶ 15). Kadah identifies the alleged material terms of that Oral Agreement. (ECF No. 3, ¶ 15(a)–(e)). Kadah also asserts that Paladin breached that Oral Agreement in various ways—specifically, "by refusing to pay the $250,000 Bonus, refusing to pay the Additional Compensation, and refusing to issue the Stock." (ECF No. 3, ¶¶ 15, 35; ECF No. 21 at 4).

34.     This sufficiently alleges a breach of contract claim.

35. While Paladin argues that the Subsequent Writings demonstrate that there was no Oral Agreement because there was no meeting of the minds and because those documents contradict Kadah's allegations, (ECF No. 10 at 4–5), the complaint alleges that the Subsequent Writings "*memorialized* the material terms of the" Oral Agreement—not that those Subsequent Writings *were* the Oral Agreement or formed the basis for the Oral Agreement. (ECF No. 3, ¶ 17 (emphasis added)).

36. Further, to the extent that Paladin argues that Kadah's complaint reflects that Kadah breached a material term of the Oral Agreement by failing to "align" with leadership, the Court disagrees that the allegations affirmatively establish a material breach by Kadah as a matter of law at this stage.

37. Ultimately, the Court cannot conclude "beyond doubt" that Kadah "could prove no set of facts in support of his claim which would entitle him to relief." *Meyer v. Walls*, 347 N.C. 97, 111–12 (1997).

38. Thus, construing all reasonable factual allegations in Kadah's favor, the Court **DENIES** Paladin's partial motion to dismiss as to Kadah's first cause of action for breach of contract.

## B. Alleged Violations of N.C. Gen. Stat. § 75–1.1 *et seq.*

39. The Court next turns to Kadah's cause of action for alleged violations of N.C. Gen. Stat. § 75–1.1 *et seq*.

40. Kadah alleges in his complaint that Paladin committed unfair or deceptive acts or practices by "misrepresenting its intention to pay the Bonus, misrepresenting its intention to honor the anti-dilution protections, using false

promises to secure Plaintiff's continued performance, and tendering coercive release documents[.]" (ECF No. 3, ¶ 51).

41. Paladin argues that, because this is an employer-employee and securities dispute and because Kadah's cause of action is ultimately one for breach of contract, a cause of action under N.C. Gen. Stat. § 75–1.1 *et seq.* fails. (ECF No. 10 at 9–11).

42. To establish a prima facie claim for a violation of that statute, a plaintiff must show that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Gen. Fid. Ins. v. WFT, Inc.*, 269 N.C. App. 181, 191 (2020) (citations omitted).

43. As the Supreme Court of North Carolina has explained, the statute "is not focused on the internal conduct of individuals within a single market participant, that is, within a single business. To the contrary, . . . the General Assembly intended the Act's provisions to apply to interactions between market participants. As a result, any unfair or deceptive conduct contained solely within a single business is not covered by the Act." *White v. Thompson*, 364 N.C. 47, 53 (2010).

44. Thus, "most employer-employee disputes fall outside the purview" of N.C. Gen. Stat. § 75–1.1 *et seq. Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 277 (2023) (citations omitted); *Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1, 21 (2007) (recognizing that "the employer/employee relationship does not fall within the intended scope and purpose of" the statute (citations omitted)); *Am. Marble*

*Corp. v. Crawford*, 84 N.C. App. 86, 88 (1987) (explaining that the former employee/defendant's Chapter 75 counterclaim "lies outside the scope of G.S. § 75-1.1").

45.    Moreover, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992).

46.    Instead, for a breach of contract to also constitute a violation of the statute, the plaintiff must identify "substantial aggravating circumstances." *Value Health Sols.*, 385 N.C. at 277 (citations and quotation marks omitted); *SciGrip, Inc. v. Osae*, 373 N.C. 409, 427 (2020).

47.    Here, Kadah fails to state a claim upon which relief can be granted.

48.    The allegations of the complaint reflect that the dispute was limited to a single market participant in the context of an employer-employee relationship, was not in or affecting commerce, and involved alleged contractual breaches between the employer and employee.

49.    Further, even with Kadah having adequately stated a claim for breach of contract, there are no allegations of substantial aggravating circumstances that would bring the dispute within the scope of N.C. Gen. Stat. § 75–1.1 *et seq.*

50.    Kadah fails to plead facts suggesting any conduct by Paladin rising to the level of unfair or deceptive conduct under Chapter 75, and Kadah's conclusory allegations of alleged misrepresentations do not support such a claim. *Brier Creek Owners Ass'n v. Brier Creek Country Club Owners Ass'n*, 2026 NCBC LEXIS 98, at

*17 (N.C. Super. Ct. Apr. 27, 2026) (dismissing cause of action under Chapter 75 where plaintiff's limited and conclusory allegations failed to state a claim); *Holleman v. Aiken*, 193 N.C. App. 484, 505 (2008) (determining that dismissal of another cause of action was appropriate where "plaintiff ha[d] not alleged sufficient facts to support plaintiff's conclusory allegation").

51. As Kadah has failed to state a claim upon which relief can be granted, the Court **GRANTS** Paladin's partial motion to dismiss Kadah's fourth cause of action and **DISMISSES WITH PREJUDICE** that cause of action.

<u>CONCLUSION</u>

Accordingly, the Court **ORDERS** that Paladin's partial motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**SO ORDERED**, this 11th day of May 2026.

<u>/s/ Matthew T. Houston</u>
Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases